**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ROBERTO HERNANDEZ and CLAUDIA HERNANDEZ**<br><br>**VS.**<br><br>**SWIFTSHIPS, LLC; STABBERT MARITIME HOLDINGS, LLC; OCEAN INTREPID HOLDING, LLC; and OCEAN SERVICES, LLC** | **CIVIL ACTION**<br><br>**NO. 6:24-CV-00912**<br><br>**JUDGE ROBERT R. SUMMERHAYS**<br><br>**MAGISTRATE DAVID J. AYO** |

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT ON CROSS CLAIM**

**MAY IT PLEASE THE COURT:**

Defendant/Cross Claimant, Huisman North America Services, LLC ("Huisman"), submits this Memorandum in Support of its Motion for Summary Judgment. As detailed herein, Huisman is entitled to defense and indemnity from Defendant/Cross Defendant, Ocean Services, LLC ("Ocean Services") pursuant to the "Huisman General Terms and Conditions of Sale 2021" of as fully articulated in the Cross Claim filed by Huisman against Ocean Services on July 1, 2025.

## I. INTRODUCTION

Roberto Hernandez filed suit for injuries he allegedly sustained while working for his employer, Alliance Mechanical Services, onboard the M/V OCEAN INTREPID. In his Original Complaint filed on July 9, 2024, Mr. Hernandez alleges that Alliance Mechanical Solutions had contracted with Ocean Services to perform welding and fitting services aboard the M/V OCEAN INTREPID while it was docked at the Swiftships shipyard in Amelia, Louisiana.[1] He contends

[1] R. Doc. 1.

that on August 11, 2023, he was performing his regular repair duties for Allied Mechanical Services aboard the M/V OCEAN INTREPID, when someone caused a cable from a mechanical crane aboard the vessel to snap and strike him from behind, "causing serious bodily injuries, including injuries to his neck, back, head, and shoulder."[2]

Mr. Hernandez's Original Complaint, filed by him and his wife, Claudia Hernandez, alleged that several defendants were responsible for his injuries, including Stabbart Marine Holding, LLC and Ocean Intrepid Holding, LLC, the owners and operators of the M/V OCEAN INTREPID.[3] Plaintiffs also named Swiftships, LLC as a defendant, alleging that its employees were responsible for causing the cable from the crane to snap, injuring Mr. Hernandez. Plaintiffs also named Ocean Services, LLC, the company responsible for arranging and managing repairs and refitment of the M/V OCEAN INTREPID, as a defendant.[4]

On April 4, 2025, Plaintiffs filed a First Amended and Supplemental Complaint, naming Huisman North America Services, LLC, as an additional defendant, alleging that its employees who were performing crane maintenance and repairs on the vessel caused the cable from a mechanical crane aboard the M/V OCEAN INTREPID to snap and strike him, causing injuries.[5]

### a. Huisman's Agreements to Provide Crane Maintenance and Repair Aboard the M/V OCEAN INTREPID.

Ocean Services contacted Huisman in August 2022 requesting that Huisman provide a quotation for certain repairs and maintenance to a 400mt Offshore Mast Crane aboard the M/V

---

[2] *Id.* ¶ 7.

[3] *Id.* ¶ 2.

[4] *Id.* Plaintiffs voluntarily dismissed Swiftships, LLC on February 18, 2025 (R. Doc. 19). Plaintiffs voluntarily dismissed Stabbart Marine Holding, LLC and Ocean Intrepid Holding, LLC on April 11, 2025 (R. Doc. 27).

[5] R. Doc. 20-1, ¶ 10.

OCEAN INTREPID while the vessel was drydocked in Tampa, Florida.[6] In response, on February 28, 2023, Huisman issued Ocean Services two separate Quotations for the requested work. Specifically, one Quotation was for Huisman to "Replace Conveyor Cable,"[7] and the other Quotation was for the performance of "2023 Maintenance."[8] Both of Huisman's Quotations expressly indicated that the "Huisman General Terms and Conditions of Sale 2021" attached to the Quotations would exclusively apply, and that any additional or different terms were expressly rejected.[9]

On March 8, 2023, Ocean Services answered Huisman's Quotations with Purchase Order No. 511816, outlining Ocean Services' offer to contract with Huisman for the performance of certain repairs and maintenance board the 400t Offshore Mast Crane aboard the M/V OCEAN INTREPID, drydocked in Tampa, Florida.[10] Like Huiseman's Quotation, Ocean Services' Purchase Order No. 511816 included language indicating that its own "Buyer's Current Terms and Conditions" would exclusively apply," and that no modifications would be accepted "prior written approval."[11] However, no copy of Ocean Services' "Current Terms and Conditions" was attached to Purchase Order No. 511816 provided to Huisman.[12]

On March 8, 2023, Huisman responded to Ocean Services' Purchase Order No. 511816 by issuing two Order Confirmations; one Order Confirmation confirmed Huisman's agreement to

---

[6] *See generally,* Exhibit 1, *in globo,* Robert A. Thompson Affidavit and corresponding Exhibits A through I.

[7] Exhibit 1, *in globo,* at Exhibit A, Huisman Quotation to Replace Conveyor Cable.

[8] *Id.,* at Exhibit B, Huisman Quotation for 2023 Maintenance.

[9] *Id.,* at Exhibits A and B, p. 4.

[10] *Id.,* at Exhibit C, Ocean Services Purchase Order No. 511816.

[11] *Id.*

[12] Exhibit 1, ¶ 8.

"Replace Conveyor Cable,"[13] and one Order Confirmation confirmed Huisman's agreement to perform "2023 Maintenance."[14] Both of Huisman's Order Confirmations indicated that the "Huisman General Terms and Conditions of Sale 2021" would apply to the exclusion of all others, and both Order Confirmations enclosed a copy of "Huisman General Terms and Conditions of Sale 2021."[15]

Then, pursuant to the contracts, Huisman's work aboard the M/V OCEAN INTREPID was completed. While Huisman was finishing the crane maintenance and repair job in Tampa, Florida, its employees discovered that a visualization computer on the crane was malfunctioning.[16] Thereafter, the M/V OCEAN INTREPID sailed to the Swiftships shipyard in Amelia, Louisiana, where a Huisman engineer boarded the vessel to remove the malfunctioning visualization computer for assessment and repair.[17]

On August 22, 2023, after Huisman completed the visualization computer assessment and repair in Amelia, Louisiana, and per Ocean Services' instructions, Huisman sent Ocean Services a third Quotation for "PIP 6-1 Repair," which invoiced Ocean Services for Huisman's time and travel to the Swiftships shipyard in Amelia, LA to conduct the visualization computer assessment and repair.[18] On August 25, 2023, Ocean Services answered Huisman's Quotation with Purchase Order No. 512067, offering to contract with Huisman for "PIP 6-1 Repair."[19] On August 28, 2023,

---

[13] Exhibit 1, *in globo,* at Exhibit D, Huisman Order Confirmation to Replace Conveyor Cable.

[14] *Id.,* at Exhibit E, Huisman Order Confirmation for 2023 Maintenance.

[15] *Id.,* at Exhibits D, p. 4.

[16] Exhibit 1, Robert A. Thompson Affidavit, ¶ 11.

[17] *Id.,* ¶ 12.

[18] Exhibit 1, *in globo,* at Exhibit F, Huisman Quotation for PIP 6-1 Repair.

[19] *Id.,* at Exhibit G, Ocean Services Purchase Order No. 512067.

Huisman responded to Ocean Services' Purchase Order No. 512067 with an Order Confirmation, confirming Huisman's acceptance of Ocean Services' offer for "PIP 6-1 Repair."[20] Once again, Huisman's Quotation and Order Confirmation for "PIP 6-1 Repair," both indicated that "Huisman General Terms and Conditions of Sale 2021" would apply to the exclusion of all others, and both attached a copy of "Huisman General Terms and Conditions of Sale 2021."[21]

Pursuant to the "Huisman General Terms and Conditions of Sale 2021," Ocean Services agreed to indemnify Huisman for any illness, injury or death suffered by any member of the "Client Group" personnel, arising out of any work done by Huisman on the crane, regardless of whether that illness, injury or death was caused by any fault or negligence on the part of Huisman. Specifically, Paragraph 8.2 states:

> 8.2 Client Indemnities: The Client (Ocean Services) shall release, defend, protect, indemnify and hold harmless all members of the Contractor (Huisman) Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.[22]

"Client Group," as the term is used in the Huisman General Terms and Conditions of Sale 2021, is defined in Section 1.2 to include all of Ocean Services' sub-contractors' employees.[23]

---

[20] *Id.,* at Exhibit H, Huisman Order Confirmation for PIP 6-1 Repair.

[21] *Id.,* at Exhibit F, p. 3, and Exhibit H, p. 4.

[22] *See* Exhibit 1, *in globo,* at Exhibits A, B, D, E, F and H, at "Huisman General Terms and Conditions of Sale 2021," p. 2 of 4.

[23] *See* Exhibit 1, *in globo,* at Exhibits A, B, D, E, F and H, at "Huisman General Terms and Conditions of Sale 2021," p. 1 of 4.

Ocean Services also agreed to indemnify Huisman for any claims, demands or causes of action brought by any third party, arising out of any work done by Huisman on the crane, regardless of whether those claims, demands or causes of action were caused by any fault or negligence on the part of Huisman. Specifically, Paragraphs 8.6 and 8.7 state:

> 8.6 The Client (Ocean Services) shall indemnify the Contractor (Huisman) for any claims, demands or causes of action brought by any third party, regardless of its kind and irrespective of any claim in tort, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.
>
> 8.7 All exclusions, limitations and indemnities contained in this clause shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether express or implied) agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, however, and whatsoever caused and including pre-existing conditions or other theory of liability.[24]

## II. PROCEDURAL BACKGROUND

On June 2, 2025, based on the express language of the contractual agreements between Huisman and Ocean Services, and the express language of Huisman's General Terms and Conditions of Sale 2021, Huisman sent a letter to Ocean Services demanding it defend and indemnify Huisman from Roberto Hernandez's personal injury claims.[25] Ocean Services did not respond to the tender.[26]

---

[24] *See* Exhibit 1, *in globo,* at Exhibits A, B, D, E, F and H, at "Huisman General Terms and Conditions of Sale 2021," p. 2 of 4.

[25] *Id.,* at Exhibit I, June 2, 2025 Demand for Defense and Indemnity.

[26] *See* Exhibit 1, Affidavit of Robert A. Thompson, ¶ 20.

Then, on July 1, 2025, Huisman filed its Answer to Plaintiff's Complaint and asserted a Cross Claim against Ocean Services, seeking defense and indemnity pursuant to the "Huisman General Terms and Conditions of Sale," attached to each Huisman Quotation and Order Confirmation.[27] On August 15, 2025, Ocean Services filed an Answer to Huisman's Cross Claim, denying its obligation under the contracts to defend and indemnify Huisman.[28]

Due to Ocean Services' refusal to honor and indemnify Huisman, Huisman respectfully asks this Court to grant its Motion for Summary Judgment and order Ocean Services to provide defense and indemnity to Huisman, including the payment and reimbursement of all attorneys' fees and costs incurred and to be incurred by Huisman because of this matter.

## LAW AND ARGUMENT

### A. Summary Judgment Standard

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant has the burden of showing that no genuine factual dispute exists. *Id*. However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in that party's favor. *Id.*, at 249.

---

[27] R. Doc. 33.

[28] R. Doc. 37.

### B. The Huisman Defense and Indemnity Provisions are Unambiguous, Valid, and Enforceable.

When a motion for summary judgment concerns the interpretation of a contract, courts construe the contract as a matter of law "where the written instrument is so worded that it can be given a certain definite legal meaning or interpretation." *Breaux v. Halliburton Energy Serv., Inc.*, 562 F.3d 358, 364 (5th Cir. 2009). Maritime contracts are treated and interpreted in accordance with these general common-law principles of contract law. *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961). A court looks first to the intent of the parties as expressed by the terms of the agreement(s). *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir. 1986). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous." *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004). While a "contract need not contain any special words to evince an intention to create a right of indemnity for independent contractual liabilities", it "must clearly express such a purpose." *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 222 (5th Cir. 2005); *Corbitt v. Diamond Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981). Therefore, absent ambiguity, indemnity clauses in maritime contracts are enforceable and are given their plain meaning. *Corbitt*, supra., 654 F.2d at 332; *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir. 2009).

To be sure, the United States Fifth Circuit has previously held as follows:

> Under maritime law, "**an indemnity agreement ... should be read as a whole and its words given their plain meaning unless the provision is ambiguous**. Disagreement as to the meaning of a contract does not make it ambiguous, nor does uncertainty or lack of clarity in the language chosen by the parties."

*Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009) (citations and quotations omitted) (emphasis added). The Fifth Circuit has further held:

> A **contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties,** but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage. Thus, for example, it is widely held that a contract of indemnity will not afford protection to an indemnitee against the consequences of his own negligent act unless the contract clearly expresses such an obligation in unequivocal terms.

*In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 841 F.Supp.2d 988, 994 (E.D. La. 2012), *citing, Corbitt, supra.*, 654 F.2d at 333; See also, *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 540 (5th Cir. 1986) (quoting *Seal Offshore, Inc. v. American Standard, Inc.*, 736 F.2d 1078, 1081 (5th Cir. 1984)) (emphasis added).

Here, the applicable indemnity provisions unambiguously state that Ocean Services owes Huisman indemnity for and defense against Roberto Hernandez's claims. As Roberto Hernandez admits, he is an employee of Ocean Services' sub-contractor, Alliance Mechanical Solutions, and therefore he is considered a member of the "Client Group." Pursuant to Sections 1.2 and 8.2 of the "Huisman General Terms and Conditions of Sale 2021," Ocean Services clearly agreed to indemnify Huisman for any illness, injury or death suffered by any member of the "Client Group" personnel, including Roberto Hernandez, arising out of any work done by Huisman on the crane, regardless of whether that illness, injury or death was caused by any fault or negligence on the part of Huisman.[29]

[29] *Supra* note 23.

Moreover, even if Roberto Hernandez is not considered a member of the "Client Group," he is considered a third party under Section 1.17 of the "Huisman General Terms and Conditions of Sale 2021," and Ocean Servies expressly agreed to indemnify Huisman against Hernandez's tort claims under Sections 8.6 and 8.7, arising out of any work done by Huisman on the crane, regardless of whether that illness, injury or death was caused by any fault or negligence on the part of Huisman.[30] Accordingly, there is no genuine dispute of material fact that Ocean Services must indemnify and defend Huisman against Roberto Hernandez's claims against Huisman, all of which arise out of work done by Huisman on the crane aboard the M/V OCEAN INTREPID.

## III. CONCLUSION

Based on a lack of evidence to the contrary, Huisman prays that this Court grant its motion for summary judgment and declare that Ocean Services owes Huisman indemnity, defense, contribution and reimbursement for any and all of Plaintiffs' claims to the extent that they arise of out Huisman's work on the crane aboard the M/B OCEAN INTREPID, including all attorney's fees and costs incurred in the defense of the action.

[30] *Supra* note 24.

Respectfully submitted,

IRWIN FRITCHIE URQUHART MOORE & DANIELS, LLC

*/s/ Gus A. Fritchie III*

GUS A. FRITCHIE III (La. Bar #5751)
EDWARD W. TRAPOLIN (La. Bar #27667)
CHRIS H. IRWIN (La. Bar #30261)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Facsimile: (504) 310-2101
gfritchie@irwinllc.com
etrapolin@irwinllc.com
cirwin@irwinllc.com

***Attorneys for Defendant and Cross Claimant, Huisman North America Services, LLC***