Exhibit 1 *in globo*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ROBERTO HERNANDEZ and CLAUDIA HERNANDEZ** | **CIVIL ACTION** |
| **VS.** | **NO. 6:24-CV-00912** |
| **SWIFTSHIPS, LLC; STABBERT MARITIME HOLDINGS, LLC; OCEAN INTREPID HOLDING, LLC; and OCEAN SERVICES, LLC** | **JUDGE ROBERT R. SUMMERHAYS** |
| | **MAGISTRATE DAVID J. AYO** |

# AFFIDAVIT

**COUNTY OF HARRIS**

**STATE OF TEXAS**

**BEFORE ME,** the undersigned authority, personally came and appeared

**ROBERT A. THOMPSON**

who upon being duly sworn, did depose and state:

1. I am a person of full age of majority, and a resident of Harris County, Texas.

2. I am currently employed as Executive Vice President of Huisman North America Services ("Huisman"), and I held this position at the time of the incident alleged in this lawsuit.

3. Ocean Services, LLC ("Ocean Services") contacted Huisman in August 2022 requesting that Huisman provide a quotation for certain repairs and maintenance to a 400mt Offshore Mast Crane aboard the M/V OCEAN INTREPID while the vessel was drydocked in Tampa, Florida.

4. On February 28, 2023, Huisman issued Ocean Services two separate Quotations for performance of the crane repairs and maintenance requested by Ocean Services; one Quotation, attached hereto as Exhibit A, for Huisman to "Replace Conveyor Cable," and the other Quotation, attached hereto as Exhibit B, for Huisman's performance of "2023 Maintenance."

5. The February 28, 2023, Huisman Quotations issued to Ocean Services expressly indicate that the "Huisman General Terms and Conditions of Sale 2021" attached

RAT

to the Quotations would exclusively apply, and that any additional or different terms were expressly rejected. *See* Exhibits A and B.

6. On March 8, 2023, Ocean Services sent Huisman Purchase Order No. 511816, attached hereto as Exhibit C, outlining Ocean Services' offer to contract with Huisman for Huisman's performance of certain repairs and maintenance of the 400t Offshore Mast Crane aboard the M/V OCEAN INTREPID, drydocked in Tampa, Florida.

7. Ocean Services' Purchase Order No. 511816 included language indicating that its own "Buyer's Current Terms and Conditions" would exclusively apply," and that no modifications would be accepted "prior written approval." *See* Exhibit C.

8. Ocean Services did not provide a copy of its "Buyer's Current Terms and Conditions" with Purchase Order No. 511816. *See* Exhibit C.

9. On March 8, 2023, Huisman responded to Ocean Services' Purchase Order No. 511816 by issuing two Order Confirmations; one Order Confirmation, attached hereto as Exhibit D, confirmed Huisman's agreement to "Replace Conveyor Cable," and the other Order Confirmation, attached hereto as Exhibit E, confirmed Huisman's agreement to perform "2023 Maintenance."

10. Both Order Confirmations issued by Huisman on March 8, 2023, indicated that the "Huisman General Terms and Conditions of Sale 2021" would apply to the exclusion of all others, and attached a copy of "Huisman General Terms and Conditions of Sale 2021." *See* Exhibits D and E.

11. While Huisman was finishing the crane maintenance and repair job in Tampa, Florida, its employees discovered that a visualization computer on the crane was malfunctioning.

12. The M/V OCEAN INTREPID then sailed to the Swiftships shipyard in Amelia, Louisiana, where a Huisman engineer boarded the vessel to remove the malfunctioning visualization computer for assessment and repair.

13. On August 22, 2023, after Huisman completed the computer assessment and repair in Amelia, Louisiana, and per Ocean Services' instructions, Huisman sent Ocean Services a third Quotation for "PIP 6-1 Repair," attached hereto as Exhibit F, which invoiced Ocean Services for Huisman's time and travel to the Swiftships shipyard in Amelia, LA to conduct the computer assessment and repairs.

14. On August 25, 2023, Ocean Services answered Huisman's Quotation with Purchase Order No. 512067, attached hereto as Exhibit G, offering to contract with Huisman for "PIP 6-1 Repair."



BH

15. On August 28, 2023, Huisman responded to Ocean Services' Purchase Order No. 512067 with an Order Confirmation, attached hereto as Exhibit H, confirming Huisman's acceptance of Ocean Service's offer for "PIP 6-1 Repair."

16. Huisman's August 22, 2023, Quotation "PIP 6-1 Repair," and Huisman's Order Confirmation for "PIP 6-1 Repair," both indicate that "Huisman General Terms and Conditions of Sale 2021" would apply to the exclusion of all others, and both attached a copy of "Huisman General Terms and Conditions of Sale 2021." *See* Exhibits F and H.

17. Pursuant to the "Huisman General Terms and Conditions of Sale 2021," Ocean Services agreed to indemnify Huisman for any illness, injury or death suffered by any member of the "Client Group" personnel, arising out of any work done by Huisman on the crane, regardless of whether that illness, injury or death was caused by any fault or negligence on the part of Huisman. *See* Exhibits A, B, D, E, F and H, at "Huisman General Terms and Conditions of Sale 2021," p. 2 of 4.

18. Pursuant to the "Huisman General Terms and Conditions of Sale 2021," Ocean Services also agreed to indemnify Huisman for any claims, demands or causes of action brought by any third party, arising out of any work done by Huisman on the crane, regardless of whether those claims, demands or causes of action were caused by any fault or negligence on the part of Huisman. *See* Exhibits A, B, D, E, F and H, at "Huisman General Terms and Conditions of Sale 2021," p. 2 of 4.

19. On June 2, 2025, based on the express language of the contractual agreements between Huisman and Ocean Services, and the express language of "Huisman's General Terms and Conditions of Sale 2021," Huisman sent a letter, attached hereto as Exhibit I, to Ocean Services demanding it defend and indemnify Huisman from Roberto Hernandez's personal injury claims.

20. To date, Ocean Services has not responded to Huisman's June 2, 2025, letter demanding defense and indemnity.

Further Affiant sayeth not.

This 4th day of December, 2025

ROBERT A. THOMPSON

SWORN TO AND SUBSCRIBED BEFORE ME
THIS 4 DAY OF December, 2025

CORRIN KAGEL
My Notary ID # 130555200
Expires March 3, 2028

NOTARY PUBLIC

Exhibit A

Huisman
Services

# Quotation

Huisman North America Services LLC
Address : 2502 Wehring Rd. Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624863
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

Our quotation No. : **00400-Q35164**
Our contact : Nathan Zacek
Document date : 1 Mar 2023
Offer date : 28 Feb 2023
Your requisition No. :
Your contact : Mr. Marcos Inda
Subject : Replace Cable Conveyor

**Delivery:**
Ocean Services
c/o Huisman North America Svcs
2502 Wehring Road
Rosenberg, TX 77471
United States of America

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

**REVISION B**

Dear Mr. Inda,

With reference to your requisition dated 16 Aug 2022, we herewith like to quote you the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Lead time (in weeks) | Price each (USD) | Amount (USD) |
|---|---|---|---|---|---|---|
| | | | **Call: 72618 - Replace Cable Conveyor** | | | |

Hereby, we make available Service Personnel to visit the M.V. Ocean Intrepid in Tampa, FL beginning ~May 10, 2023 till about June 6, 2023, **pending proper visum status.** The exact start date has to be agreed upon at least 4 weeks prior to the actual visit to optimise the availability of Huisman service personnel.

**Description of work**
The proposed scope of work includes:
- Work preparation & reporting
- Replace Cable Conveyor on board

**Scope of supply**
- Work plan
- Service report

**Excluded from scope**
- Crane for lifting
- Painting and paint supplies
- Class survey
- Non Destructive Testing
- Oxy Acetylene cutting rig
- Supply of electricity
- Load Test (If required)
- Electricians
- Repairs to existing metal (If required)
- Scaffolding (inside mast, on slew platform, at cable tension post)
- All others not explicitly mentioned in the scope description. This can be offered in a Variation Order, this will always be in consultation with the client.

Huisman Services

# Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q35164** | Your requisition No. : | |
| Document date | : 1 Mar 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 28 Feb 2023 | Our contact | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

| | | | **Description<br>Parts specifications** | **Lead time (in weeks)** | **Price each (USD)** | **Amount (USD)** |
|---|---|---|---|---|---|---|
| | | | **Call: 72618 - Replace Cable Conveyor** | | | |
| | | | **Office scope** | | | |
| 001 | 1 | 9132886 | Workplan Development | . | 6,800.00 | 6,800.00 |
| 002 | 80 | 9051371NA | Preparation & Reporting Hours | . | 143.00 | 11,440.00 |
| | | | **Budget price for IC&T**<br>Note:<br>Prior to a visit, Huisman must approve client's COVID-19 measures and arrangements. When necessary, client to accept costs for COVID-19 related measures and arrangements on arrival, during, or after the work. | | | |
| 010 | 25 | 9051289NA | Service Engineer | . | 1,979.00 | 49,475.00 |
| 011 | 25 | 9051237NA | Service Technician | . | 1,690.00 | 42,250.00 |
| 012 | 21 | 9051211NA | Welder | . | 1,360.00 | 28,560.00 |
| 013 | 21 | 9051211NA | Fitter | . | 1,360.00 | 28,560.00 |
| 014 | 20 | 9051211NA | Electrical Fitter<br>*2 Electrical Fitters to be provided by Stabbert for 10 days each.* | . | | 0.00 |
| | | | **Travel / Lodging** | | | |
| 020 | 2 | 9051354NA | Service Engineer Travel Days | . | 1,649.00 | 3,298.00 |
| 021 | 2 | 9051350NA | Service Technician Travel Days | . | 1,408.00 | 2,816.00 |
| 022 | 4 | 9051348NA | Welder Travel Days | . | 1,133.00 | 4,532.00 |
| 023 | 4 | 9051348NA | Mechanical Fitter Travel Days | . | 1,133.00 | 4,532.00 |
| 024 | 6 | 9051348NA | Elec Fitter Travel Days<br>*2 Electrical Fitters to be provided by Stabbert for 10 days each.* | . | | 0.00 |
| 030 | 6 | 9042202NA | Travel/Mobilization Expenses<br>*Please note this is an estimation.* | . | 2,000.00 | 12,000.00 |
| 031 | 18 | 9132849NA | Travel Day Meal Per Diem<br>*Meals to be provided by vessel.* | . | 60.00 | 1,080.00 |
| | | | **Materials Required for IC&T** | | | |
| 090 | 1 | 9132886 | Fabricated Materials/Tooling<br>Lifting Eyes | 8 | 4,500.00 | 4,500.00 |
| 091 | 1 | 9132886 | E Consumables | 8 | 15,000.00 | 15,000.00 |
| | | | **Others** | | | |
| 100 | 4 | 9132886 | Service/Welding Container Rent | . | 2,250.00 | 9,000.00 |
| 102 | 2 | 9133978 | Transportation Costs Container<br>Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50.00. | . | 3,500.00 | 7,000.00 |

Please note that mentioned hours and belonging costs are

Huisman Services

# Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q35164** | Your requisition No. : | |
| Document date | : 1 Mar 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 28 Feb 2023 | Our contact | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

| Description<br>Parts specifications | Lead time<br>(in weeks) | Price each<br>(USD) | Amount<br>(USD) |
|---|---|---|---|

**Call: 72618 - Replace Cable Conveyor**

estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

All costs related to COVID-19 measures and arrangements on arrival, during, or after the work will be charged against actual costs with a 15% surcharge. Any quarantine days related to the visit will be charged as travel days based on the applicable Huisman service rates at the time of execution.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

On completion of any service rendered, a service report will follow, which describes all such services, provides recommendations and indicates any outstanding work, items and/or issues.

Living Quarters & Facilities:

HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client's personnel.

Consumables & Others:

All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract.

In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as travel days according the HS Day Rates - Field service.

Huisman Services

# Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q35164** | Your requisition No. | : |
| Document date | : 1 Mar 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 28 Feb 2023 | Our contact | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

| **Description**<br>**Parts specifications** | **Lead time**<br>**(in weeks)** | **Price each**<br>**(USD)** | **Amount**<br>**(USD)** |
|---|---|---|---|

**Total amount (excl.Sales Tax) in USD:** 230,843.00

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

| | |
|---|---|
| Prices | : All prices are net, excluding Sales Tax |
| Currency | : USD |
| Lead time | : Lead time starts after the receipt of your official purchase order and is subject to prior sales. |
| Delivery term | : FCA Rosenberg Incoterms ® 2020 |
| Payment schedule | : 100% at delivery |
| Payment term | : 30 days from date of invoice |
| Validity of Quotation | : 2 weeks after issue date of this quotation |
| Terms & conditions | : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this quotation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected. |

We trust that this quotation meets your requirements and look forward to your reply.

This quotation has been digitally authorized.

Yours sincerely,

For any information regarding this quotation please contact:

Nathan Zacek
Account Manager

Nathan Zacek
Account manager
nzacek@huisman-na.com

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 “Client” means the Party entering into the Contract with the Contractor.

1.2 “Client Group” means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client’s customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.3 “Completion” means the completion of the Work as set out in the Contract.

1.4 “Confidential Information” means all information in relation to the Contract as further set out in clause 11 hereof.

1.5 “Contract” means any contract or order entered into between the Client and the Contractor that is based on the Contractor’s quotation or offer or that makes reference to these Terms.

1.6 “Contract Price” means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.

1.7 “Contractor” means the Huisman entity set out in the Contract.

1.8 “Contractor Group” means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.9 “Delivery” means delivery of the Equipment or the Work as set out in clause 5.1 hereof.

1.10 “Equipment” means the permanent physical result of the Work and its components.

1.11 “Force Majeure” means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.

1.12 “Insolvency Event” shall mean:

- a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;
- b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;
- c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn of cancelled within a period of thirty (30) days after institution thereof; and
- d. the appointment of a receiver of the undertaking or property.

1.13 “Services” means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client’s equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.

1.14 “Statutory Changes” means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.

1.15 “Party” means individually the Contractor or the Client as the context requires, and the term “Parties” refers to the Contractor and Client collectively.

1.16 “Terms” means these “Huisman General Terms and Conditions of Sale 2021”, which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.

1.17 “Third Party” means any party who is not a member of the Client Group or the Contractor Group.

1.18 “Warranty” means the warranty as applicable to the Work, as specified in clause 7.1 hereof.

1.19 “Warranty Period” means the period for which the Work is warranted, as specified in clause 7.1 hereof.

1.20 “Work” means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client’s request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor’s last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor’s costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, “Customs Fees”). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor’s premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor’s premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer’s fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.

4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client’s risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.

4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client’s risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.

4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor’s premises, except that loading the Client’s means of transport and any transport required in connection with such loading shall be for the Client’s own cost and risk. Risk passes to Client upon Delivery.

5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.

5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.

5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay; nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.

5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.

5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client’s sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client’s legitimate interest in the enforcement of the Contractor’s obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.

5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client’s decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client’s account.

6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the “Warranty”) for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the “Warranty Period”).

7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or



Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group,

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and
d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©

Exhibit *B*

Huisman
Services

# Quotation

Huisman North America Services LLC
Address : 2502 Wehring Rd. Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624863
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

| | |
|---|---|
| Our quotation No. | : **00400-Q35258** |
| Our contact | : Nathan Zacek |
| Document date | : 8 Mar 2023 |
| Offer date | : 28 Feb 2023 |
| Your requisition No. | : |
| Your contact | : Mr. Marcos Inda |
| Subject | : 2023 Maintenance |

**Delivery:**
Ocean Services
c/o Huisman North America Svcs
2502 Wehring Road
Rosenberg, TX 77471
United States of America

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

**REVISION C**

Dear Mr. Inda,

With reference to your requisition dated 16 Aug 2022, we herewith like to quote you the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Lead time (in weeks) | Price each (USD) | Amount (USD) |
|---|---|---|---|---|---|---|

**Call: 72804 - 2023 Maintenance**

Hereby, we make available Service Personnel to visit the M.V. Ocean Intrepid in Tampa, FL beginning ~ May 10, 2023 till about June 6, 2023, **pending proper visum status**. The exact start date has to be agreed upon at least 4 weeks prior to the actual visit to optimise the availability of Huisman service personnel.

**Description of work**

The proposed scope of work includes:
- Work preparation & reporting
- Work on board

I. Check pre-tension of the crane slew bearings bolts
II. Inspect Heel Pin Wear
III. Overhaul of Main Block/Hook.
IV. Inspect luffing sheaves.
V. Replace shaft seals and inspect shafts of whip hoist and luffing gear boxes.
VI. Adjust the clearance between the teeth of the gears of the slew bearing and the slew drive, **if Pre Inspection deems possible.**

**Scope of supply**
- Work plan
- Service report

**Excluded from scope**
- All others not explicitly mentioned in the scope description. This can be offered in a Variation Order, this will always be in consultation with the client.

Huisman Services

## Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q35258** | Your requisition No. | : |
| Document date | : 8 Mar 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 28 Feb 2023 | Our contact | : Nathan Zacek |
| Subject | : 2023 Maintenance | | |

| | | | **Description**<br>**Parts specifications** | **Lead time (in weeks)** | **Price each (USD)** | **Amount (USD)** |
|---|---|---|---|---|---|---|
| | | | **Call: 72804 - 2023 Maintenance** | | | |
| | | | **Office scope** | | | |
| 001 | 1 | 9132886 | Workplan Development | . | 5,000.00 | 5,000.00 |
| 002 | 24 | 9051371NA | Preparation & Reporting Hours | . | 143.00 | 3,432.00 |
| | | | **Budget price for IC&T**<br>Note:<br>Prior to a visit, Huisman must approve client's COVID-19 measures and arrangements. When necessary, client to accept costs for COVID-19 related measures and arrangements on arrival, during, or after the work. | | | |
| 010 | 14 | 9051289NA | 1x Service Engineer | . | 1,979.00 | 27,706.00 |
| 011 | 14 | 9051237NA | 1x Service Technician | . | 1,690.00 | 23,660.00 |
| | | | **Travel / Lodging** | | | |
| 020 | 2 | 9051354NA | Service Engineer Travel Days | . | 1,649.00 | 3,298.00 |
| 021 | 2 | 9051350NA | Service Technician Travel Days | . | 1,408.00 | 2,816.00 |
| 030 | 2 | 9042202NA | Travel/Mobilization Expenses<br>*Please note this is an estimation.* | . | 2,000.00 | 4,000.00 |
| 031 | 4 | 9132849NA | Travel Day Meal Per Diem<br>*Vessel to provide meals.* | . | 60.00 | 240.00 |
| | | | **Others** | | | |
| 100 | 4 | 9132886 | Service Container | . | 1,900.00 | 7,600.00 |
| 101 | 2 | 9133978 | Transportation Costs Container<br>Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50.00. | . | 3,500.00 | 7,000.00 |

Please note that mentioned hours and belonging costs are estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

All costs related to COVID-19 measures and arrangements on arrival, during, or after the work will be charged against actual costs with a 15% surcharge. Any quarantine days related to the visit will be charged as travel days based on the applicable Huisman service rates at the time of execution.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

Huisman Services

## Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q35258** | Your requisition No. | : |
| Document date | : 8 Mar 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 28 Feb 2023 | Our contact | : Nathan Zacek |
| Subject | : 2023 Maintenance | | |

| Description<br>Parts specifications | Lead time<br>(in weeks) | Price each<br>(USD) | Amount<br>(USD) |
|---|---|---|---|

**Call: 72804 - 2023 Maintenance**

On completion of any service rendered, a service report will follow, which describes all such services, provides recommendations and indicates any outstanding work, items and/or issues.

Living Quarters & Facilities:
HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client's personnel.

Consumables & Others:
All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract.

In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as travel days according the HS Day Rates - Field service.

**Total amount (excl.Sales Tax) in USD:** 84,752.00

Huisman Services

# Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q35258** | Your requisition No. | : |
| Document date | : 8 Mar 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 28 Feb 2023 | Our contact | : Nathan Zacek |
| Subject | : 2023 Maintenance | | |

| **Description**<br>**Parts specifications** | **Lead time**<br>**(in weeks)** | **Price each**<br>**(USD)** | **Amount**<br>**(USD)** |
|---|---|---|---|

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

| | |
|---|---|
| Prices | : All prices are net, excluding Sales Tax |
| Currency | : USD |
| Lead time | : Lead time starts after the receipt of your official purchase order and is subject to prior sales . |
| Delivery term | : FCA Rosenberg Incoterms ® 2020 |
| Payment schedule | : 100% at delivery |
| Payment term | : 30 days from date of invoice |
| Validity of Quotation | : |
| Terms & conditions | : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this quotation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected. |

We trust that this quotation meets your requirements and look forward to your reply.

This quotation has been digitally authorized.

Yours sincerely,

For any information regarding this quotation please contact:

Nathan Zacek
Account Manager

Nathan Zacek
Account manager
nzacek@huisman-na.com

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 "Client" means the Party entering into the Contract with the Contractor.
1.2 "Client Group" means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client's customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.
1.3 "Completion" means the completion of the Work as set out in the Contract.
1.4 "Confidential Information" means all information in relation to the Contract as further set out in clause 11 hereof.
1.5 "Contract" means any contract or order entered into between the Client and the Contractor that is based on the Contractor's quotation or offer or that makes reference to these Terms.
1.6 "Contract Price" means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.
1.7 "Contractor" means the Huisman entity set out in the Contract.
1.8 "Contractor Group" means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.
1.9 "Delivery" means delivery of the Equipment or the Work as set out in clause 5.1 hereof.
1.10 "Equipment" means the permanent physical result of the Work and its components.
1.11 "Force Majeure" means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.
1.12 "Insolvency Event" shall mean:
  a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;
  b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;
  c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn or cancelled within a period of thirty (30) days after institution thereof; and
  d. the appointment of a receiver of the undertaking or property.
1.13 "Services" means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client's equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.
1.14 "Statutory Changes" means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.
1.15 "Party" means individually the Contractor or the Client as the context requires, and the term "Parties" refers to the Contractor and Client collectively.
1.16 "Terms" means these "Huisman General Terms and Conditions of Sale 2021", which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.
1.17 "Third Party" means any party who is not a member of the Client Group or the Contractor Group.
1.18 "Warranty" means the warranty as applicable to the Work, as specified in clause 7.1 hereof.
1.19 "Warranty Period" means the period for which the Work is warranted, as specified in clause 7.1 hereof.
1.20 "Work" means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client's request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor's last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor's costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, "Customs Fees"). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor's premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor's premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer's fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.
4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.
4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.
4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor's premises, except that loading the Client's means of transport and any transport required in connection with such loading shall be for the Client's own cost and risk. Risk passes to Client upon Delivery.
5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.
5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.
5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay; nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.
5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.
5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client's sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client's legitimate interest in the enforcement of the Contractor's obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.
5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client's decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client's account.
6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the "Warranty") for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the "Warranty Period").
7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or



Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group,

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and
d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.



Huisman 2021©

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©

Exhibit C

Ocean Services, LLC

2629 NW 54th St, Ste201
WA 98107

# Purchase Order

| Date | P.O. No. |
|---|---|
| 3/8/2023 | 511816 |

| Vendor | Ship To |
|---|---|
| Huisman North America Services LLC.<br>2502 Wehring Road<br>Rosenberg, TX 77471 | Ocean Services, LLC<br>2629 NW 54th St, Ste201<br>WA 98107 |

| Vessel | Account # | Ship Via | Expected | Terms | Buyer |
|---|---|---|---|---|---|
| Intrepid | | | 3/8/2023 | Net 30 | Marcos Inda/ Tony R |

| Proposal/Quote # | Description | Amount |
|---|---|---|
| Q35164 | REPLACE CONVEYOR | 230,843.00 |
| Q35258 | MAINTENANCE | 84,752.00 |

**Do not exceed the Purchase Order total. Any increase to this issued amount MUST HAVE prior written approval.**

| | | |
|---|---|---|
| | **Total** | **$315,595.00** |

This Purchase Order constitutes an offer to purchase goods or services from Seller. Such Purchase Order is expressly conditioned upon Seller's Agrement to Buyer's current Terms and Conditions. No Modifications to which will be accepted without prior written approval.

Huisman Services

# Order confirmation

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle, WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

Huisman North America Services LLC
Address : 2502 Wehring Rd.
Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624863
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Our order No. : **00400-S34712**
Our contact : Nathan Zacek
Document date : 13-03-2023
Order date : 08-03-2023
Your order No. : 511816
Your contact : Mr. Marcos Inda
Subject : Replace Cable Conveyor

**Delivery:**
Ocean Services
c/o Huisman North America Svcs
2502 Wehring Road
Rosenberg, TX 77471
United States of America

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

Dear Mr. Inda,

With reference to your order dated 8 Mar 2023, we herewith confirm the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72618 - Replace Cable Conveyor** | | | |

Hereby, we make available Service Personnel to visit the M.V. Ocean Intrepid in Tampa, FL beginning ~May 10, 2023 till about June 6, 2023, **pending proper visum status.**
The exact start date has to be agreed upon at least 4 weeks prior to the actual visit to optimise the availability of Huisman service personnel.

**Description of work**
The proposed scope of work includes:
- Work preparation & reporting
- Replace Cable Conveyor on board

**Scope of supply**
- Work plan
- Service report

**Excluded from scope**
- Crane for lifting
- Painting and paint supplies
- Class survey
- Non Destructive Testing
- Oxy Acetylene cutting rig
- Supply of electricity
- Load Test (If required)
- Electricians
- Repairs to existing metal (If required)
- Scaffolding (inside mast, on slew platform, at cable tension post)
- All others not explicitly mentioned in the scope description.

This can be offered in a Variation Order, this will always be in consultation with the client.

Huisman Services

# Order confirmation

| | | | | |
|---|---|---|---|---|
| Our order No. | : 00400-S34712 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72618 - Replace Cable Conveyor** | | | |
| | | | **Office scope** | | | |
| 001 | 1 | 9132886 | Workplan Development | | 6,800.00 | 6,800.00 |
| 002 | 80 | 9051371NA | Preparation & Reporting Hours | | 143.00 | 11,440.00 |
| | | | **Budget price for IC&T** | | | |
| | | | Note: Prior to a visit, Huisman must approve client's COVID-19 measures and arrangements. When necessary, client to accept costs for COVID-19 related measures and arrangements on arrival, during, or after the work. | | | |
| 010 | 25 | 9051289NA | Service Engineer | | 1,979.00 | 49,475.00 |
| 011 | 25 | 9051237NA | Service Technician | | 1,690.00 | 42,250.00 |
| 012 | 21 | 9051211NA | Welder | | 1,360.00 | 28,560.00 |
| 013 | 21 | 9051211NA | Fitter | | 1,360.00 | 28,560.00 |
| 014 | 20 | 9051211NA | Electrical Fitter | | 0.00 | 0.00 |
| | | | *2 Electrical Fitters to be provided by Stabbert for 10 days each.* | | | |
| | | | **Travel / Lodging** | | | |
| 020 | 2 | 9051354NA | Service Engineer Travel Days | | 1,649.00 | 3,298.00 |
| 021 | 2 | 9051350NA | Service Technician Travel Days | | 1,408.00 | 2,816.00 |
| 022 | 4 | 9051348NA | Welder Travel Days | | 1,133.00 | 4,532.00 |
| 023 | 4 | 9051348NA | Mechanical Fitter Travel Days | | 1,133.00 | 4,532.00 |
| 024 | 6 | 9051348NA | Elec Fitter Travel Days | | 0.00 | 0.00 |
| | | | *2 Electrical Fitters to be provided by Stabbert for 10 days each.* | | | |
| 030 | 6 | 9042202NA | Travel/Mobilization Expenses | | 2,000.00 | 12,000.00 |
| | | | *Please note this is an estimation.* | | | |
| 031 | 18 | 9132849NA | Travel Day Meal Per Diem | | 60.00 | 1,080.00 |
| | | | *Meals to be provided by vessel.* | | | |
| | | | **Materials Required for IC&T** | | | |
| 090 | 1 | 9132886 | Fabricated Materials/Tooling | | 4,500.00 | 4,500.00 |
| | | | Lifting Eyes | | | |
| 091 | 1 | 9132886 | E Consumables | | 15,000.00 | 15,000.00 |
| | | | **Others** | | | |
| 100 | 4 | 9132886 | Service/Welding Container Rent | | 2,250.00 | 9,000.00 |
| 102 | 2 | 9133978 | Transportation Costs Container | | 3,500.00 | 7,000.00 |

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S34712 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72618 - Replace Cable Conveyor** | | | |

Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50.00.

Please note that mentioned hours and belonging costs are estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

All costs related to COVID-19 measures and arrangements on arrival, during, or after the work will be charged against actual costs with a 15% surcharge. Any quarantine days related to the visit will be charged as travel days based on the applicable Huisman service rates at the time of execution.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

On completion of any service rendered, a service report will follow, which describes all such services, provides recommendations and indicates any outstanding work, items and/or issues.

Living Quarters & Facilities:
HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client’s personnel.

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S34712 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72618 - Replace Cable Conveyor** | | | |

<u>Consumables & Others:</u>
All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract.

In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as travel days according the HS Day Rates - Field service.

Your V.A.T number :

**Total amount (excl.Sales Tax) in USD: 230,843.00**

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

Prices : All prices are net, excluding Sales Tax
Curreny : USD
Delivery terms : FCA Rosenberg Incoterms ® 2020
Payment schedule : 100% at delivery
Payment terms : 30 days from date of invoice
Terms & conditions : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this order confirmation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected.

Huisman Services

## Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S34712 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : Replace Cable Conveyor | | |

Yours sincerely,

This order has been digitally authorized.

For any information regarding this order please contact:

Nathan Zacek
Account manager
nzacek@huisman-na.com

Nathan Zacek
Account manager
nzacek@huisman-na.com

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 "Client" means the Party entering into the Contract with the Contractor.

1.2 "Client Group" means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client's customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.3 "Completion" means the completion of the Work as set out in the Contract.

1.4 "Confidential Information" means all information in relation to the Contract as further set out in clause 11 hereof.

1.5 "Contract" means any contract or order entered into between the Client and the Contractor that is based on the Contractor's quotation or offer or that makes reference to these Terms.

1.6 "Contract Price" means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.

1.7 "Contractor" means the Huisman entity set out in the Contract.

1.8 "Contractor Group" means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.9 "Delivery" means delivery of the Equipment or the Work as set out in clause 5.1 hereof.

1.10 "Equipment" means the permanent physical result of the Work and its components.

1.11 "Force Majeure" means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.

1.12 "Insolvency Event" shall mean:

a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;
b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;
c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn of cancelled within a period of thirty (30) days after institution thereof; and
d. the appointment of a receiver of the undertaking or property.

1.13 "Services" means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client's equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.

1.14 "Statutory Changes" means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.

1.15 "Party" means individually the Contractor or the Client as the context requires, and the term "Parties" refers to the Contractor and Client collectively.

1.16 "Terms" means these "Huisman General Terms and Conditions of Sale 2021", which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.

1.17 "Third Party" means any party who is not a member of the Client Group or the Contractor Group.

1.18 "Warranty" means the warranty as applicable to the Work, as specified in clause 7.1 hereof.

1.19 "Warranty Period" means the period for which the Work is warranted, as specified in clause 7.1 hereof.

1.20 "Work" means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client's request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor's last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor's costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, "Customs Fees"). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor's premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor's premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer's fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.

4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.

4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.

4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor's premises, except that loading the Client's means of transport and any transport required in connection with such loading shall be for the Client's own cost and risk. Risk passes to Client upon Delivery.

5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.

5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.

5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay; nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.

5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.

5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client's sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client's legitimate interest in the enforcement of the Contractor's obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.

5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client's decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client's account.

6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the "Warranty") for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the "Warranty Period").

7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or



Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group,

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and
d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.



Huisman 2021©

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©

Huisman
Services

# Order confirmation

Huisman North America Services LLC
Address : 2502 Wehring Rd.
Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624863
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle, WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

| | | |
|---|---|---|
| Our order No. | : | **00400-S34713** |
| Our contact | : | Nathan Zacek |
| Document date | : | 13-03-2023 |
| Order date | : | 08-03-2023 |
| Your order No. | : | 511816 |
| Your contact | : | Mr. Marcos Inda |
| Subject | : | 2023 Maintenance |

**Delivery:**
Ocean Services
c/o Huisman North America Svcs
2502 Wehring Road
Rosenberg, TX 77471
United States of America

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

Dear Mr. Inda,

With reference to your order dated 8 Mar 2023, we herewith confirm the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72804 - 2023 Maintenance** | | | |

Hereby, we make available Service Personnel to visit the M.V. Ocean Intrepid in Tampa, FL beginning ~ May 10, 2023 till about June 6, 2023, **pending proper visum status**.
The exact start date has to be agreed upon at least 4 weeks prior to the actual visit to optimise the availability of Huisman service personnel.

**Description of work**
The proposed scope of work includes:
- Work preparation & reporting
- Work on board
I. Check pre-tension of the crane slew bearings bolts
II. Inspect Heel Pin Wear
III. Overhaul of Main Block/Hook.
IV. Inspect luffing sheaves.
V. Replace shaft seals and inspect shafts of whip hoist and luffing gear boxes.
VI. Adjust the clearance between the teeth of the gears of the slew bearing and the slew drive, **if Pre Inspection deems possible.**

**Scope of supply**
- Work plan
- Service report

**Excluded from scope**
- All others not explicitly mentioned in the scope description.
This can be offered in a Variation Order, this will always be in

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S34713 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : 2023 Maintenance | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72804 - 2023 Maintenance** | | | |
| | | | consultation with the client. | | | |
| | | | **Office scope** | | | |
| 001 | 1 | 9132886 | Workplan Development | | 5,000.00 | 5,000.00 |
| 002 | 24 | 9051371NA | Preparation & Reporting Hours | | 143.00 | 3,432.00 |
| | | | **Budget price for IC&T** | | | |
| | | | Note: Prior to a visit, Huisman must approve client's COVID-19 measures and arrangements. When necessary, client to accept costs for COVID-19 related measures and arrangements on arrival, during, or after the work. | | | |
| 010 | 14 | 9051289NA | 1x Service Engineer | | 1,979.00 | 27,706.00 |
| 011 | 14 | 9051237NA | 1x Service Technician | | 1,690.00 | 23,660.00 |
| | | | **Travel / Lodging** | | | |
| 020 | 2 | 9051354NA | Service Engineer Travel Days | | 1,649.00 | 3,298.00 |
| 021 | 2 | 9051350NA | Service Technician Travel Days | | 1,408.00 | 2,816.00 |
| 030 | 2 | 9042202NA | Travel/Mobilization Expenses | | 2,000.00 | 4,000.00 |
| | | | *Please note this is an estimation.* | | | |
| 031 | 4 | 9132849NA | Travel Day Meal Per Diem | | 60.00 | 240.00 |
| | | | *Vessel to provide meals.* | | | |
| | | | **Others** | | | |
| 100 | 4 | 9132886 | Service Container | | 1,900.00 | 7,600.00 |
| 101 | 2 | 9133978 | Transportation Costs Container | | 3,500.00 | 7,000.00 |

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S34713 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : 2023 Maintenance | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72804 - 2023 Maintenance** | | | |

Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50.00.

Please note that mentioned hours and belonging costs are estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

All costs related to COVID-19 measures and arrangements on arrival, during, or after the work will be charged against actual costs with a 15% surcharge. Any quarantine days related to the visit will be charged as travel days based on the applicable Huisman service rates at the time of execution.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

On completion of any service rendered, a service report will follow, which describes all such services, provides recommendations and indicates any outstanding work, items and/or issues.

Living Quarters & Facilities:
HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client's personnel.

Huisman Services

# Order confirmation

| | | | | |
|---|---|---|---|---|
| Our order No. | : 00400-S34713 | Your order No. | : | 511816 |
| Document date | : 13-03-2023 | Your contact : | : | Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : | Nathan Zacek |
| Subject | : 2023 Maintenance | | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 72804 - 2023 Maintenance** | | | |
| | | | Consumables & Others: All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract. | | | |
| | | | In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as travel days according the HS Day Rates - Field service. | | | |

Your V.A.T number :

**Total amount (excl.Sales Tax) in USD: 84,752.00**

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

Prices : All prices are net, excluding Sales Tax
Curreny : USD
Delivery terms : FCA Rosenberg Incoterms ® 2020
Payment schedule : 100% at delivery
Payment terms : 30 days from date of invoice
Terms & conditions : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this order confirmation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected.

Huismann Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S34713 | Your order No. | : 511816 |
| Document date | : 13-03-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 08-03-2023 | Our contact : | : Nathan Zacek |
| Subject | : 2023 Maintenance | | |

Yours sincerely,

This order has been digitally authorized.

For any information regarding this order please contact:

Nathan Zacek
Account manager
nzacek@huisman-na.com

Nathan Zacek
Account manager
nzacek@huisman-na.com

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 "Client" means the Party entering into the Contract with the Contractor.

1.2 "Client Group" means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client's customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.3 "Completion" means the completion of the Work as set out in the Contract.

1.4 "Confidential Information" means all information in relation to the Contract as further set out in clause 11 hereof.

1.5 "Contract" means any contract or order entered into between the Client and the Contractor that is based on the Contractor's quotation or offer or that makes reference to these Terms.

1.6 "Contract Price" means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.

1.7 "Contractor" means the Huisman entity set out in the Contract.

1.8 "Contractor Group" means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.9 "Delivery" means delivery of the Equipment or the Work as set out in clause 5.1 hereof.

1.10 "Equipment" means the permanent physical result of the Work and its components.

1.11 "Force Majeure" means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.

1.12 "Insolvency Event" shall mean:

a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;
b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;
c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn of cancelled within a period of thirty (30) days after institution thereof; and
d. the appointment of a receiver of the undertaking or property.

1.13 "Services" means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client's equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.

1.14 "Statutory Changes" means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.

1.15 "Party" means individually the Contractor or the Client as the context requires, and the term "Parties" refers to the Contractor and Client collectively.

1.16 "Terms" means these "Huisman General Terms and Conditions of Sale 2021", which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.

1.17 "Third Party" means any party who is not a member of the Client Group or the Contractor Group.

1.18 "Warranty" means the warranty as applicable to the Work, as specified in clause 7.1 hereof.

1.19 "Warranty Period" means the period for which the Work is warranted, as specified in clause 7.1 hereof.

1.20 "Work" means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client's request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor's last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor's costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, "Customs Fees"). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor's premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor's premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer's fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.

4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.

4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.

4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor's premises, except that loading the Client's means of transport and any transport required in connection with such loading shall be for the Client's own cost and risk. Risk passes to Client upon Delivery.

5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.

5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.

5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay; nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.

5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.

5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client's sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client's legitimate interest in the enforcement of the Contractor's obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.

5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client's decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client's account.

6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the "Warranty") for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the "Warranty Period").

7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or


Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group,

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;

b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;

c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and

d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;

b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;

c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.



Huisman 2021©

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©

Huisman Services

# Quotation

Huisman North America Services LLC
Address : 2502 Wehring Rd.
Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624863
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

Our quotation No. : **00400-Q38645**
Our contact : Nathan Zacek
Document date : 21 Aug 2023
Offer date : 22 Aug 2023
Your requisition No. :
Your contact : Mr. Marcos Inda
Subject : PIP 6-1 Repair

**Delivery:**
M/V Ocean Intrepid - Ocean Services
c/o Swift Ships
2317 State Road 662 S
Amelia, LA 70340
United States of America

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

**REVISION 0**

Dear Mr. Inda,

With reference to your requisition dated 2 Aug 2023, we herewith like to quote you the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Lead time (in weeks) | Price each (USD) | Amount (USD) |
|---|---|---|---|---|---|---|

**Call: 78977 - PIP 6-1 Repair**

**Scope A (Crane PC)**
Troubleshoot client supplied Crane PC.
Install new hard drive.
Install new CMOS battery.
Troubleshoot Year 2001 application to run on Year 2023 hard drives.
Success not gauranteed.
Short term solution

**Scope B (Vessel Spare PC)**
Troubleshoot client supplied Crane PC.
Install new hard drive.
Troubleshoot Year 2001 application to run on Year 2023 hard drives.
Send to OEM for analysis.
Supply OEM quote for repairs.
Success not gauranteed.
Short term solution.

**Scope C (ICT)**
Mobilize serivce engineer to M/V Ocean Intrepid to install and test first repaired and office tested PC on board in crane.

**Excluded from scopes**
- Warranty
- All others not explicitly mentioned in the scope description. This can be offered in a Variation Order, this will always be in consultation with the client.

Huisman Services

## Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q38645** | Your requisition No. | : |
| Document date | : 21 Aug 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 22 Aug 2023 | Our contact | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| | | | **Description<br>Parts specifications** | **Lead time<br>(in weeks)** | **Price each<br>(USD)** | **Amount<br>(USD)** |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |
| | | | **Scope A** | | | |
| 001 | 1 | 9132886 | CS Engineering | 4 | 14,800.00 | 14,800.00 |
| 002 | 1 | 9408135 | Hard Disk | 2 | 250.00 | 250.00 |
| | | | **Scope B** | | | |
| 011 | 1 | 9132886 | CS Engineering | 4 | 7,400.00 | 7,400.00 |
| 012 | 1 | 9408135 | Hard Disk | 2 | 250.00 | 250.00 |
| 013 | 1 | 9132840 | OEM Analysis<br>Diagnostic test and analysis of PIP6-1, SN 1047.<br>A quote for repairs will be issued upon test and analysis. | 8 | 1,430.00 | 1,430.00 |
| 014 | 1 | 9132840 | OEM Repair<br>A quote for repairs will be issued upon test and analysis. | 8 | 1.00 | 1.00 |
| | | | **Scope C**<br>**Service Engineer, 1x** | | | |
| 021 | 1 | 9051289NA | Days (1-12Hrs.) | . | 1,979.00 | 1,979.00 |
| 022 | 2 | 9051354NA | Travel Days | . | 1,649.00 | 3,298.00 |
| | | | **Travel Costs** | | | |
| 023 | 1 | 9132849NA | Estimated Travel Costs<br>Estimated Travel Expenses (airfare, taxi, parking, lodging, mileage, rental car).<br>Invoiced at cost plus 10% | . | 1,000.00 | 1,000.00 |
| 024 | 500 | 9051147NA | Mileage Fee Travel V.V. Vessel | . | 1.00 | 500.00 |
| 900 | 1 | 9133978 | Estimated Transportation Costs<br>Spare PC to OEM, return from OEM, to Stabbert/Ocean Services.<br>Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50,-. | . | 500.00 | 500.00 |

Please note that mentioned hours and belonging costs are estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

Huisman Services

# Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q38645** | Your requisition No. | : |
| Document date | : 21 Aug 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 22 Aug 2023 | Our contact | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| Description<br>Parts specifications | Lead time<br>(in weeks) | Price each<br>(USD) | Amount<br>(USD) |
|---|---|---|---|

**Call: 78977 - PIP 6-1 Repair**

Living Quarters & Facilities:

HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client's personnel.

Consumables & Others:

All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract.

In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as travel days according the HS Day Rates - Field service.

**Total amount (excl.Sales Tax) in USD:** 31,408.00

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

| | |
|---|---|
| Prices | : All prices are net, excluding Sales Tax |
| Currency | : USD |
| Lead time | : Lead time starts after the receipt of your official purchase order and is subject to prior sales . |
| Delivery term | : DAP Amelia Incoterms ® 2020 |
| Payment schedule | : 100% at delivery |
| Payment term | : 30 days from date of invoice |
| Validity of Quotation | : 2 weeks after issue date of this quotation |
| Terms & conditions | : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this quotation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected. |

Huisman Services

# Quotation

| | | | |
|---|---|---|---|
| Our quotation No. | : **00400-Q38645** | Your requisition No. | : |
| Document date | : 21 Aug 2023 | Your contact | : Mr. Marcos Inda |
| Offer date | : 22 Aug 2023 | Our contact | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| **Description**<br>**Parts specifications** | **Lead time**<br>**(in weeks)** | **Price each**<br>**(USD)** | **Amount**<br>**(USD)** |
|---|---|---|---|

We trust that this quotation meets your requirements and look forward to your reply.

This quotation has been digitally authorized.

Yours sincerely,

For any information regarding this quotation please contact:

Nathan Zacek
Account Manager

Nathan Zacek
Account manager
nzacek@huisman-na.com

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 "Client" means the Party entering into the Contract with the Contractor.

1.2 "Client Group" means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client's customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.3 "Completion" means the completion of the Work as set out in the Contract.

1.4 "Confidential Information" means all information in relation to the Contract as further set out in clause 11 hereof.

1.5 "Contract" means any contract or order entered into between the Client and the Contractor that is based on the Contractor's quotation or offer or that makes reference to these Terms.

1.6 "Contract Price" means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.

1.7 "Contractor" means the Huisman entity set out in the Contract.

1.8 "Contractor Group" means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.9 "Delivery" means delivery of the Equipment or the Work as set out in clause 5.1 hereof.

1.10 "Equipment" means the permanent physical result of the Work and its components.

1.11 "Force Majeure" means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.

1.12 "Insolvency Event" shall mean:

a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;
b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;
c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn of cancelled within a period of thirty (30) days after institution thereof; and
d. the appointment of a receiver of the undertaking or property.

1.13 "Services" means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client's equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.

1.14 "Statutory Changes" means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.

1.15 "Party" means individually the Contractor or the Client as the context requires, and the term "Parties" refers to the Contractor and Client collectively.

1.16 "Terms" means these "Huisman General Terms and Conditions of Sale 2021", which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.

1.17 "Third Party" means any party who is not a member of the Client Group or the Contractor Group.

1.18 "Warranty" means the warranty as applicable to the Work, as specified in clause 7.1 hereof.

1.19 "Warranty Period" means the period for which the Work is warranted, as specified in clause 7.1 hereof.

1.20 "Work" means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client's request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor's last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor's costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, "Customs Fees"). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor's premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor's premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer's fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.

4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.

4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.

4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor's premises, except that loading the Client's means of transport and any transport required in connection with such loading shall be for the Client's own cost and risk. Risk passes to Client upon Delivery.

5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.

5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.

5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay; nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.

5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.

5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client's sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client's legitimate interest in the enforcement of the Contractor's obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.

5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client's decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client's account.

6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the "Warranty") for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the "Warranty Period").

7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or


Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group,

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and
d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.



Huisman 2021©

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©

Huisman 2021©

Exhibit G

**Ocean Services, LLC**

2629 NW 54th St, Ste201
WA 98107

# Purchase Order

| Date | P.O. No. |
|---|---|
| 8/25/2023 | 512067 |

| Vendor | Ship To |
|---|---|
| Huisman North America Services LLC.<br>2502 Wehring Road<br>Rosenberg, TX 77471 | Ocean Services, LLC<br>2629 NW 54th St, Ste201<br>WA 98107 |

| Vessel | Account # | Ship Via | Expected | Terms | Buyer |
|---|---|---|---|---|---|
| Intrepid | | | 8/25/2023 | Net 30 | Marcos Inda |

| Proposal/Quote # | Description | Amount |
|---|---|---|
| 00400-Q38645 | Huisman Crane Computer MPL Repair and Installation No. 1181(1) And 1047 ( F ) | 31,408.00 |

**Do not exceed the Purchase Order total. Any increase to this issued amount MUST HAVE prior written approval.**

| | | |
|---|---|---|
| | **Total** | **$31,408.00** |

This Purchase Order constitutes an offer to purchase goods or services from Seller. Such Purchase Order is expressly conditioned upon Seller's Agreement to Buyer's current Terms and Conditions. No Modifications to which will be accepted without prior written approval.

Huisman
Services

# Order confirmation

Huisman North America Services LLC
Address : 2502 Wehring Rd.
Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624863
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle, WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

Our order No. : **00400-S36065**
Our contact : Nathan Zacek
Document date : 28-08-2023
Order date : 25-08-2023
Your order No. : 512067
Your contact : Mr. Marcos Inda
Subject : PIP 6-1 Repair

**Delivery:**
M/V Ocean Intrepid - Ocean Services
c/o Swift Ships
2317 State Road 662 S
Amelia, LA 70340
United States of America

**MODIFICATION 0**

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

Dear Mr. Inda,

With reference to your order dated 25 Aug 2023, we herewith confirm the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|

**Call: 78977 - PIP 6-1 Repair**

**Scope A (Crane PC)**
Troubleshoot client supplied Crane PC.
Install new hard drive.
Install new CMOS battery.
Troubleshoot Year 2001 application to run on Year 2023 hard drives.
Success not gauranteed.
Short term solution

**Scope B (Vessel Spare PC)**
Troubleshoot client supplied Crane PC.
Install new hard drive.
Troubleshoot Year 2001 application to run on Year 2023 hard drives.
Send to OEM for analysis.
Supply OEM quote for repairs.
Success not gauranteed.
Short term solution.

**Scope C (ICT)**
Mobilize serivce engineer to M/V Ocean Intrepid to install and test first repaired and office tested PC on board in crane.

**Excluded from scopes**
- Warranty
- All others not explicitly mentioned in the scope description.
This can be offered in a Variation Order, this will always be in consultation with the client.

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S36065 | Your order No. | : 512067 |
| Document date | : 28-08-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 25-08-2023 | Our contact : | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |
| | | | **Scope A** | | | |
| 001 | 1 | 9132886 | CS Engineering | | 14,800.00 | 14,800.00 |
| 002 | 1 | 9408135 | Hard Disk | 202344 | 250.00 | 250.00 |
| | | | **Scope B** | | | |
| 011 | 1 | 9132886 | CS Engineering | | 7,400.00 | 7,400.00 |
| 012 | 1 | 9408135 | Hard Disk | 202344 | 250.00 | 250.00 |
| 013 | 1 | 9132840 | OEM Analysis<br>Diagnostic test and analysis of PIP6-1, SN 1047.<br>A quote for repairs will be issued upon test and analysis. | | 1,430.00 | 1,430.00 |
| 014 | 1 | 9132840 | OEM Repair<br>A quote for repairs will be issued upon test and analysis. | | 1.00 | 1.00 |
| | | | **Scope C**<br>**Service Engineer, 1x** | | | |
| 021 | 1 | 9051289NA | Days (1-12Hrs.) | | 1,979.00 | 1,979.00 |
| 022 | 2 | 9051354NA | Travel Days | | 1,649.00 | 3,298.00 |
| | | | **Travel Costs** | | | |
| 023 | 1 | 9132849NA | Estimated Travel Costs<br>Estimated Travel Expenses (airfare, taxi, parking, lodging, mileage, rental car).<br>Invoiced at cost plus 10% | | 1,000.00 | 1,000.00 |
| 024 | 500 | 9051147NA | Mileage Fee Travel V.V. Vessel | | 1.00 | 500.00 |
| 900 | 1 | 9133978 | Estimated Transportation Costs | | 500.00 | 500.00 |

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S36065 | Your order No. | : 512067 |
| Document date | : 28-08-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 25-08-2023 | Our contact : | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |

Spare PC to OEM, return from OEM, to Stabbert/Ocean Services.
Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50,-.

Please note that mentioned hours and belonging costs are estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

Living Quarters & Facilities:
HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client's personnel.

Consumables & Others:
All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract.

In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as

Huisman
Services

# Order confirmation

| | | | | |
|---|---|---|---|---|
| Our order No. | : 00400-S36065 | | Your order No. | : 512067 |
| Document date | : 28-08-2023 | | Your contact : | : Mr. Marcos Inda |
| Order date | : 25-08-2023 | | Our contact : | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |
| | | | travel days according the HS Day Rates - Field service. | | | |

Your V.A.T number :

**Total amount (excl.Sales Tax) in USD:** **31,408.00**

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

Prices : All prices are net, excluding Sales Tax
Curreny : USD
Delivery terms : DAP Amelia Incoterms ® 2020
Payment schedule : 100% at delivery
Payment terms : 30 days from date of invoice
Terms & conditions : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this order confirmation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected.

Yours sincerely,

This order has been digitally authorized.

For any information regarding this order please contact:

Nathan Zacek
Account manager
nzacek@huisman-na.com

Nathan Zacek
Account manager
nzacek@huisman-na.com

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 "Client" means the Party entering into the Contract with the Contractor.

1.2 "Client Group" means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client's customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.3 "Completion" means the completion of the Work as set out in the Contract.

1.4 "Confidential Information" means all information in relation to the Contract as further set out in clause 11 hereof.

1.5 "Contract" means any contract or order entered into between the Client and the Contractor that is based on the Contractor's quotation or offer or that makes reference to these Terms.

1.6 "Contract Price" means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.

1.7 "Contractor" means the Huisman entity set out in the Contract.

1.8 "Contractor Group" means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.9 "Delivery" means delivery of the Equipment or the Work as set out in clause 5.1 hereof.

1.10 "Equipment" means the permanent physical result of the Work and its components.

1.11 "Force Majeure" means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.

1.12 "Insolvency Event" shall mean:

a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;
b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;
c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn or cancelled within a period of thirty (30) days after institution thereof; and
d. the appointment of a receiver of the undertaking or property.

1.13 "Services" means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client's equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.

1.14 "Statutory Changes" means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.

1.15 "Party" means individually the Contractor or the Client as the context requires, and the term "Parties" refers to the Contractor and Client collectively.

1.16 "Terms" means these "Huisman General Terms and Conditions of Sale 2021", which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.

1.17 "Third Party" means any party who is not a member of the Client Group or the Contractor Group.

1.18 "Warranty" means the warranty as applicable to the Work, as specified in clause 7.1 hereof.

1.19 "Warranty Period" means the period for which the Work is warranted, as specified in clause 7.1 hereof.

1.20 "Work" means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client's request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor's last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor's costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, "Customs Fees"). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor's premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor's premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer's fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.

4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.

4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.

4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor's premises, except that loading the Client's means of transport and any transport required in connection with such loading shall be for the Client's own cost and risk. Risk passes to Client upon Delivery.

5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.

5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.

5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay; nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.

5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.

5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client's sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client's legitimate interest in the enforcement of the Contractor's obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.

5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client's decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client's account.

6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the "Warranty") for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the "Warranty Period").

7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or


Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group,

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and
d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;
b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;
c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.


Huisman 2021©

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©

Exhibit I

Irwin Fritchie
IRWIN FRITCHIE URQUHART MOORE & DANIELS

GUS A. FRITCHIE III
DIRECT DIAL: 504-310-2106
GFritchie@irwinllc.com

June 2, 2025

**VIA EMAIL**
Kathryn Lynn Briuglio, Esq.
Michael Thomas Neuner, Esq.
Trevor Matthew Cutaiar, Esq.
MOULEDOUX BLAND
701 Poydras, Suite 600
New Orleans, Louisiana 70139

Re: *Roberto Hernadez, et al. v. Swiftships, LLC, et al.,*
USDC Western District – Lafayette Division – Case No. 6:24-CV-912
Our File No.: 9703.188

Dear Counsel:

I represent Huisman North America Services, LLC in the referenced matter. It is my understanding that you represent Ocean Services, LLC.

In this matter, Roberto Hernandez alleges that on August 11, 2023, he was employed by Alliance Mechanical Solutions who had contracted with Ocean Services, LLC ("Ocean Services") to perform welding and fitting services upon the M/V Ocean Intrepid while docked at the Swiftships facility in Amelia, Louisiana. Hernandez further alleges that he was injured when a cable from a mechanical crane aboard the vessel snapped and struck him. Hernandez further alleges that employees of Huisman North American Services, LLC ("Huisman") were operating and/or repairing the crane aboard the vessel and caused the cable to snap.

On March 8, 2023, Ocean Services contracted with Huisman to do certain repairs and maintenance to a 400mt Offshore Mast Crane aboard the M/V Ocean Intrepid while drydocked in Tampa, Florida, pursuant to Ocean Services Order No. 511816. After the Huisman work was completed in Tampa aboard the M/V Ocean Intrepid and the crane was powered up, a malfunction occurred with regard to a computer display monitor mounted in the cab of the crane. Thereafter, the vessel sailed to the Swiftships facility in Amelia, Louisiana.

Upon arrival of the vessel in Amelia, Huisman personnel removed the monitor and sent it to the manufacturer for repairs. On August 11, 2023, Huisman personnel reinstalled the repaired monitor on the crane aboard the M/V Ocean Intrepid while docked at the Swiftships facility in Amelia, Louisiana pursuant to the contract referenced above. After the computer monitor was powered up, a crane operator employed by Ocean Services was asked to function test the crane movements to verify information

being displayed on the monitor. During movements of the crane by the operator, the right tugger rope on the crane parted landing on the main deck of the vessel near the base of the crane mast. Despite the claims of Mr. Hernandez, no injuries were reported.

At the direction of Stabbert Maritime Holding, LLC, the parent of Ocean Services, Huisman was instructed to invoice the computer monitor repairs to Ocean Services under a new purchase order, No. 512067, a copy of which along with the Huisman General Terms and Conditions of Sale are attached. Pursuant to the terms and conditions of the Huisman General Terms and Conditions of Sale in this contract, Ocean Services agreed to indemnify Huisman for any claims, demands or causes of action brought by any third party, such as Mr. Hernandez, arising out of any work done by Huisman on the crane. Specifically, Paragraphs 8.6 and 8.7 state:

> 8.6 The Client (Ocean Services) shall indemnify the Contractor (Huisman) for any claims, demand or causes of action brought by any third party, regardless of its kind and irrespective of any claim in tort, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.
>
> 8.7 All exclusions, limitations and indemnities contained in this clause shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether express or implied) agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, however, and whatsoever caused and including pre-existing conditions or other theory of liability.

In light of the foregoing, Huisman tenders its defense and indemnity of the claims set forth in the referenced matter by Roberto Hernandez, *et al.* to Ocean Services. Please advise at your earliest convenience as to whether Ocean Services agrees to accept this tender and assume the defense and indemnity of Huisman in this matter.

Very truly yours,

IRWIN FRITCHIE URQUHART
MOORE & DANIELS, LLC

Gus A. Fritchie III

Gus A. Fritchie III

GAFIII:sr
Attachments

**Ocean Services, LLC**

2629 NW 54th St, Ste201
WA 98107

# Purchase Order

| Date | P.O. No. |
|---|---|
| 8/25/2023 | 512067 |

| Vendor | Ship To |
|---|---|
| Huisman North America Services LLC.<br>2502 Wehring Road<br>Rosenberg, TX 77471 | Ocean Services, LLC<br>2629 NW 54th St, Ste201<br>WA 98107 |

| Vessel | Account # | Ship Via | Expected | Terms | Buyer |
|---|---|---|---|---|---|
| Intrepid | | | 8/25/2023 | Net 30 | Marcos Inda |

| Proposal/Quote # | Description | Amount |
|---|---|---|
| 00400-Q38645 | Huisman Crane Computer MPL Repair and Installation No. 1181(1) And 1047 ( F ) | 31,408.00 |

**Do not exceed the Purchase Order total. Any increase to this issued amount MUST HAVE prior written approval.**

| | |
|---|---|
| **Total** | **$31,408.00** |

This Purchase Order constitutes an offer to purchase goods or services from Seller. Such Purchase Order is expressly conditioned upon Seller's Agrement to Buyer's current Terms and Conditions. No Modifications to which will be accepted without prior written approval.

Huisman
Services

# Order confirmation

Huisman North America Services LLC
Address : 2502 Wehring Rd. Rosenberg Tx 77471
Telephone : +1 832 490 1111
Internet : www.huismanequipment.com
E-mail : accounting@huisman-na.com
EIN : 26-3624663
Bank : Zions Bancorporation, N.A.
Account : 0003929566
Routing : 113011258
SWIFT/BIC : ZFNBUS55

Ocean Services, LLC
Attention - Accounts Payable
2629 NW 54th Street #201
Seattle, WASHINGTON 98107
United States of America

Tel : +1 206 547 6161
Fax : +1 206 547 6010

| | | |
|---|---|---|
| Our order No. | : | **00400-S36065** |
| Our contact | : | Nathan Zacek |
| Document date | : | 28-08-2023 |
| Order date | : | 25-08-2023 |
| Your order No. | : | 512067 |
| Your contact | : | Mr. Marcos Inda |
| Subject | : | PIP 6-1 Repair |

**Delivery:**
M/V Ocean Intrepid - Ocean Services
c/o Swift Ships
2317 State Road 662 S
Amelia, LA 70340
United States of America

**MODIFICATION 0**

**Object : M.V. Ocean Intrepid, IMO 8641939, 400mt OMC**

Dear Mr. Inda,

With reference to your order dated 25 Aug 2023, we herewith confirm the following items:

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |

**Scope A (Crane PC)**
Troubleshoot client supplied Crane PC.
Install new hard drive.
Install new CMOS battery.
Troubleshoot Year 2001 application to run on Year 2023 hard drives.
Success not gauranteed.
Short term solution

**Scope B (Vessel Spare PC)**
Troubleshoot client supplied Crane PC.
Install new hard drive.
Troubleshoot Year 2001 application to run on Year 2023 hard drives.
Send to OEM for analysis.
Supply OEM quote for repairs.
Success not gauranteed.
Short term solution.

**Scope C (ICT)**
Mobilize serivce engineer to M/V Ocean Intrepid to install and test first repaired and office tested PC on board in crane.

**Excluded from scopes**
- Warranty
- All others not explicitly mentioned in the scope description. This can be offered in a Variation Order, this will always be in consultation with the client.

Huisman
Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S36065 | Your order No. | : 512067 |
| Document date | : 28-08-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 25-08-2023 | Our contact : | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |
| | | | **Scope A** | | | |
| 001 | 1 | 9132886 | CS Engineering | | 14,800.00 | 14,800.00 |
| 002 | 1 | 9408135 | Hard Disk | 202344 | 250.00 | 250.00 |
| | | | **Scope B** | | | |
| 011 | 1 | 9132886 | CS Engineering | | 7,400.00 | 7,400.00 |
| 012 | 1 | 9408135 | Hard Disk | 202344 | 250.00 | 250.00 |
| 013 | 1 | 9132840 | OEM Analysis<br>Diagnostic test and analysis of PIP6-1, SN 1047. A quote for repairs will be issued upon test and analysis. | | 1,430.00 | 1,430.00 |
| 014 | 1 | 9132840 | OEM Repair<br>A quote for repairs will be issued upon test and analysis. | | 1.00 | 1.00 |
| | | | **Scope C**<br>**Service Engineer, 1x** | | | |
| 021 | 1 | 9051289NA | Days (1-12Hrs.) | | 1,979.00 | 1,979.00 |
| 022 | 2 | 9051354NA | Travel Days | | 1,649.00 | 3,298.00 |
| | | | **Travel Costs** | | | |
| 023 | 1 | 9132849NA | Estimated Travel Costs<br>Estimated Travel Expenses (airfare, taxi, parking, lodging, mileage, rental car).<br>Invoiced at cost plus 10% | | 1,000.00 | 1,000.00 |
| 024 | 500 | 9051147NA | Mileage Fee Travel V.V. Vessel | | 1.00 | 500.00 |
| 900 | 1 | 9133978 | Estimated Transportation Costs | | 500.00 | 500.00 |

Huisman Services

# Order confirmation

| | | | | |
|---|---|---|---|---|
| Our order No. | : 00400-S36065 | Your order No. | : 512067 |
| Document date | : 28-08-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 25-08-2023 | Our contact : | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |

Spare PC to OEM, return from OEM, to Stabbert/Ocean Services.
Please note that these costs are an estimate. All related costs for transportation are subject to a subsequent calculation, based on actual costs with a surcharge of 15% and with a minimum of $ 50,-.

Please note that mentioned hours and belonging costs are estimated. Actual hours and (travel) costs will be invoiced after the visit based on signed timesheets, office support hours, ticket costs and any other additional costs against the applicable Huisman Services Rates.

The Huisman HSE guidelines and policies will be applicable for this work scope. When the HSE policies and guidelines of the client supersede those of Huisman, the client HSE policies and guidelines will prevail. The client is then responsible for the execution of the HSE plan.

Living Quarters & Facilities:
HS personnel shall be provided with accommodation according to European standards. The accommodation shall be for a maximum of one person per facility. To aid in an efficient working environment, internet, office and phone facilities shall be available for the HS staff on board the vessel free of charge. HS personnel shall have access to and be granted the use of all medical facilities, first aid, access to safe evacuation, laundry on board as well as dry and wet canteens, dining areas, recreation areas, and other full facilities as are made available/ at par with client's personnel.

Consumables & Others:
All consumables, assistance, labour, scaffolding, tools and tackles, workshop facilities, operators of onboard equipment, availability of equipment, etc. shall be provided free of charge to HS for work under this contract.

In case HS personnel cannot embark at the start of work and/or disembark after work is completed and reported, normal working days will be charged as

Huisman Services

# Order confirmation

| | | | |
|---|---|---|---|
| Our order No. | : 00400-S36065 | Your order No. | : 512067 |
| Document date | : 28-08-2023 | Your contact : | : Mr. Marcos Inda |
| Order date | : 25-08-2023 | Our contact : | : Nathan Zacek |
| Subject | : PIP 6-1 Repair | | |

| Item | Qty | Code Huisman | Description Parts specifications | Delivery Week | Price each USD | Amount USD |
|---|---|---|---|---|---|---|
| | | | **Call: 78977 - PIP 6-1 Repair** | | | |
| | | | travel days according the HS Day Rates - Field service. | | | |

Your V.A.T number :

**Total amount (excl.Sales Tax) in USD:** **31,408.00**

Our minimum sales order value amounts to USD 600,- If the order value does not meet the minimum we will charge administrative costs of USD 300,-.
Sales order value excluding certification, packaging, transportation costs.

Prices : All prices are net, excluding Sales Tax
Curreny : USD
Delivery terms : DAP Amelia Incoterms ® 2020
Payment schedule : 100% at delivery
Payment terms : 30 days from date of invoice
Terms & conditions : The Huisman General Terms and Conditions of Sale 2021 shall exclusively apply. A copy is enclosed to this order confirmation. Any other, additional or different terms and conditions not contained therein are hereby explicitly rejected.

Yours sincerely,

This order has been digitally authorized.

Nathan Zacek
Approved
2023.08.28 15:05:54 -05'00'

Nathan Zacek
Account manager
nzacek@huisman-na.com

For any information regarding this order please contact:

Nathan Zacek
Account manager
nzacek@huisman-na.com

Huisman

# HUISMAN GENERAL TERMS AND CONDITIONS OF SALE 2021

## 1 APPLICABILITY AND DEFINITIONS

In these Terms:

1.1 "Client" means the Party entering into the Contract with the Contractor.

1.2 "Client Group" means, individually and collectively, the Client, its direct or indirect partners, parents, subsidiary and affiliated companies, shipyards, Client's customers, clients, end-clients and operators, vessel owners, charterers or operators, agents, representatives, other (sub-) contractors of any tier of the Client (excluding the Contractor Group), and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.3 "Completion" means the completion of the Work as set out in the Contract.

1.4 "Confidential Information" means all information in relation to the Contract as further set out in clause 11 hereof.

1.5 "Contract" means any contract or order entered into between the Client and the Contractor that is based on the Contractor's quotation or offer or that makes reference to these Terms.

1.6 "Contract Price" means the compensation payable by the Client to the Contractor for the execution of the Work, as set out in the Contract.

1.7 "Contractor" means the Huisman entity set out in the Contract.

1.8 "Contractor Group" means, individually and collectively, the Contractor, including its partners, parent, subsidiary and affiliated companies, agents, representatives, suppliers and (sub)contractors of any tier of the Contractor and their respective employees, servants, officers and directors, and all their successors and subrogees.

1.9 "Delivery" means delivery of the Equipment or the Work as set out in clause 5.1 hereof.

1.10 "Equipment" means the permanent physical result of the Work and its components.

1.11 "Force Majeure" means any event that (i) delays compliance by the Contractor of its obligations under the Contract; (ii) is beyond the reasonable control of the Contractor; (iii) does not result from the fault or negligence of the Contractor; and (d) could not have been avoided by the Contractor through the exercise of proper diligence.

1.12 "Insolvency Event" shall mean:

a. the filing of a petition or the making of an order or the passing of an effective resolution for the winding-up;

b. insolvency or bankruptcy under the provision of any insolvency or bankruptcy law;

c. institution of any proceedings under the provision of any insolvency or bankruptcy law or any law for the relief of debtors, with such proceedings not being withdrawn of cancelled within a period of thirty (30) days after institution thereof; and

d. the appointment of a receiver of the undertaking or property.

1.13 "Services" means Work which includes, but is not limited to, engineering, advice, software updates, support, information, field work, installation, operation, assistance, testing, modifications of the Client's equipment and/or repair activities regarding the Equipment, apparatus, machinery, installations, and its deliverables as described in the Contract.

1.14 "Statutory Changes" means any changes to any applicable laws, rules, regulations or requirements entering into force from the date of entry into the Contract that apply to the Work.

1.15 "Party" means individually the Contractor or the Client as the context requires, and the term "Parties" refers to the Contractor and Client collectively.

1.16 "Terms" means these "Huisman General Terms and Conditions of Sale 2021", which shall apply to all inquiries, documents, Contracts, quotes and commissions in relation to the Work.

1.17 "Third Party" means any party who is not a member of the Client Group or the Contractor Group.

1.18 "Warranty" means the warranty as applicable to the Work, as specified in clause 7.1 hereof.

1.19 "Warranty Period" means the period for which the Work is warranted, as specified in clause 7.1 hereof.

1.20 "Work" means the supply of Equipment or Services as described in the Contract.

## 2 CONTRACT

The Contractor shall perform the Work in a professional and workmanlike manner, in accordance with the technical specification, scope of work and schedule included in the Contract. References to and the applicability of any other terms and conditions other than these Terms are hereby expressly rejected and the Parties agree that these Terms shall solely apply to the Contract. Any changes to or deviations of these Terms are to be agreed between the Parties in writing. Unless specifically agreed otherwise, the Client's request for the Contractor to commence the Work prior to the execution of the Contract shall be deemed as an acceptance of the Contractor's last quotation or offer and Terms. The Contract represents the entire agreement between the Parties and supersedes all prior agreements, representations and understandings of the parties, whether implied, expressed, written, or oral.

## 3 PRICES

Unless otherwise agreed in the Contract all prices exclude any (i) indirect taxes such as but not limited to value added tax, goods & services tax, sales tax, service tax, excise duty, customs duties and import and export charges, whether foreign or domestic; and (ii) costs or fees for (un)loading, harbour and demurrage or storage costs or fees; and (iii) consular fees for legalising invoices, issuance of certificates of origin, stamping of bills of lading, or other charges required by the laws of any country of transit or destination, or any fines imposed due to incorrect declarations. Charges may be added for extra preparation and packaging for Delivery. If the Contractor's costs of performing the Work are increased by reason of any act of government, classification or certification body or authority, then such increase shall be added to the Contract Price.

All payments to be made to Contractor under the Contract shall be made without any deduction of any (local or withholding) taxes, levies, licenses, duties, charges, fees and withholdings of any nature now or hereafter imposed by any governmental authority save as required by law. If the Client is compelled to make any such deduction, it will pay to the Contractor such additional amounts as are necessary to ensure receipt by the Contractor of the full amount which the Contractor would have received but for the deduction. Any rates and fees are exclusive of any applicable customs duties and import and export charges, duties and fees levied in the country where the Work is performed; on the importation and/or exportation of equipment and materials owned by the Contractor Group and used in or for the execution of the Work (collectively, "Customs Fees"). The Client shall reimburse the Contractor for such Customs Fees paid by the Contractor, including gross-up if applicable. Any rates and fees are based on the Work being performed at the Contractor's premises in Houston, Texas. If the Work is to be carried out by the Contractor Group at a location outside the Contractor's premises in Houston, Texas, the rates and fees shall be adjusted to cover any local taxes, licenses and fees levied on the Contractor Group associated with the Work. In the event of any changes in applicable taxes, licenses and fees which occur as a result of changes in any laws, ordinances, rules, regulations, by-laws, orders and interpretations thereof, associated with the Work, whether by any governmental, national, federal, state, local or other authority having jurisdiction of the Worksite, the rates shall be increased to compensate the Contractor for the increase in taxes, licenses and fees caused by such change, including gross-up if applicable.

## 4 PAYMENT

4.1 Unless otherwise agreed in the Contract, the terms of payment shall be thirty (30) days from the invoice date. All payments are due in the currency specified in the Contract and/or the Contractor's invoice. The Contractor may charge interest on all overdue accounts at the lesser of (i) one and a half percent (1.5%) per month (eighteen percent (18%) per annum), or (ii) the maximum allowed applicable statutory rate of interest, as well as all reasonable legal fees (including lawyer's fees, appraisal fees, costs incurred for notarisation/legalisation of documents, etc.) and other costs incurred in the collection thereof.

4.2 Where genuine doubts arise as to the Client's financial position, the Contractor reserves the right to suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost and without any liability to the Client, until satisfactory security for payment under the Contract has been provided. The Client shall not be entitled to offset or withhold any amounts without written approval from the Contractor.

4.3 In the event the Client fails to remedy a material breach or fails to fulfil any of its payment obligations hereunder within fourteen (14) days from written notice thereof by the Contractor, then without further notice, the Contractor may suspend the Work (or part thereof) and secure and store the Work (or part thereof) at the Client's risk and cost until such material breach or failure to pay is remedied. If the default or failure to pay persists after a period of thirty (30) days following such notice, the Contractor may terminate the Contract with immediate effect without any liability to the Client, and the Contractor may resell all Equipment purchased in relation to the Work to any Third Party. The Contractor may suspend or terminate the Contract with immediate effect in case an Insolvency Event occurs for the Client. In the event of such termination, the Client shall pay to the Contractor: (i) all monies due in respect of all Work performed; plus (ii) all documented costs (including the costs of cancellation or termination or transfer of supplier contracts); plus (iii) a termination fee equal to ten percent (10%) of the Contract Price.

4.4 Title to the Work shall remain with the Contractor until receipt by the Contractor of the full payment of the Contract Price.

## 5 DELIVERY AND COMPLETION

5.1 Unless otherwise agreed in the Contract, Delivery means delivery Free Carrier (FCA, Incoterms 2020) of the Equipment at the Contractor's premises, except that loading the Client's means of transport and any transport required in connection with such loading shall be for the Client's own cost and risk. Risk passes to Client upon Delivery.

5.2 In the event the Client fails to take Delivery of the Equipment, the Contractor may, without prejudice to any of its other rights, arrange for the storage of the Equipment at the cost and risk of the Client and withhold Delivery until full payment has been received.

5.3 Any delays in or failures of performance by the Contractor shall not constitute default or give rise to any claims, if and to the extent that such failures or delays are caused by Force Majeure. The Contractor shall notify the Client with reasonable promptness of the existence of any such Force Majeure and the probable duration thereof, and shall provide the Client with correct information concerning the same from time to time. The Contractor when experiencing Force Majeure, shall take all reasonable actions to mitigate the effects of Force Majeure.

5.4 In the event that the Contractor's performance is delayed by Force Majeure, or by a delay not attributable to the Contractor, the Delivery date or date for the Contractor's performance shall be extended by the duration of the delay, plus a reasonable time to allow the Contractor to recommence and perform the Work. The Client shall not be entitled to cancel or terminate a Contract on the basis of such delay, nor shall the Client be entitled to suspend its obligations or impose any form of damages on the basis of such delay. In the event of any delay due to Force Majeure or any other delay which is not attributable to the Contractor, the Client shall reimburse the Contractor for any and all additional costs incurred in connection therewith. In the event that a delay due to Force Majeure exceeds a period of one hundred and twenty (120) days, either Party may terminate the Contract by notice to the other Party. Upon such termination, the Client shall, within thirty (30) days thereafter, pay all monies due in respect of all Work or part thereof properly performed, to the extent not already paid, plus all direct and documented costs incurred as a result of such termination.

5.5 The Client may not refuse or delay Delivery or Completion for any defects or deficiencies that do not hinder or prevent the normal and safe installation, commissioning, testing, use, operation or maintenance of the Equipment. Any such defects shall be listed in a punch list and shall be remedied by the Contractor within a reasonable period.

5.6 In the event that the Contractor does not achieve Delivery on the agreed date of Delivery (as amended in accordance with the provisions of the Contract), due to the default of the Contractor and to the extent that such is not a delay which is attributable to the Client, the Contractor shall pay to the Client liquidated damages in an amount of zero point five percent (0.5%) of the Contract Price for each week of delay to a maximum of five percent (5%) of the Contract Price. The Client's sole and exclusive, full and final remedy for late performance by the Contractor is limited to such liquidated damages, in lieu of any other rights of the Client under this Contract or at law. The Parties agree that any such liquidated damages are not a penalty but a genuine pre-estimate of the damages which may be sustained by the Client, are in proportion to the Client's legitimate interest in the enforcement of the Contractor's obligations and are not extravagant, exorbitant or unconscionable. For the avoidance of doubt, where the Work or Services performed by the Contractor includes the provision of crane operations, the Client shall not be entitled to impose any damages, liquidated or otherwise, for late performance by the Contractor.

5.7 The consequences of any Statutory Changes shall be for the account of the Client. If performance of the Contract becomes or will become impracticable for the Contractor as a consequence of such Statutory Changes, the Contractor may terminate the Contract and the Client shall compensate the Contractor for any costs, expenses and commitments made in connection with the Contract.

## 6 TERMINATION BY CLIENT

6.1 Except as expressly provided otherwise in these Terms, the Client may only terminate a Contract in the event that the Contractor fails to effect Delivery within a period of one hundred (100) days from the scheduled date of Delivery (as may be extended by Force Majeure or any delays not attributable to the Contractor) or the occurrence of an Insolvency Event for Contractor. Any other termination rights are excluded, with the exception of termination rights that cannot be excluded under the applicable law. Upon such termination, the Client shall take over the Work as performed at that point in time in accordance with the Contract and pay to the Contractor, as full and final satisfaction of any and all claims, the following: (i) all monies due in respect of all Work or part thereof properly performed; minus (ii) all reasonable direct costs incurred by a Third Part to have the Work completed that are in excess f the part of the Contract Price that corresponds with the part for which the Work is terminated. The Client shall have the obligation to mitigate any cost necessary for the Completion of the Work. Any costs that are a consequence of Client's decision not to complete the Work or any part thereof in the geographical region where the Contractor completed or intended to complete the Work shall be for the Client's account.

6.2 The rights pursuant to this clause shall be exclusive and in lieu of any other remedies available to the Client by virtue of this Contract or at law.

## 7 WARRANTY

7.1 Subject to the terms set forth herein, the Contractor warrants that the Work (excluding always the performance of any crane operations) shall be free of defects in design, workmanship and materials (the "Warranty") for a period of eighteen (18) months from Delivery or twelve (12) months from Completion, whichever period ends earlier (the "Warranty Period").

7.2 Subject to this clause 7, within the Warranty Period, the Contractor shall either repair or



Huisman 2021©

replace part of the Equipment, or re-perform the Services (excluding always the performance of any crane operations) which are found to be defective and for which defect it is clear that the Contractor is responsible, free of charge. Replacement parts will be delivered Ex-Works (Incoterms 2020), and the Contractor may require the return of allegedly defective parts, freight pre-paid, to establish the Warranty. In case of defects in any of the Services, the Warranty is limited to re-performing the defective Services.

7.3 The Warranty is only applicable if: (i) the defect occurred under normal and proper use and service, not due to normal wear and tear, accidents or adverse weather conditions; and (ii) the Work is installed, operated and maintained strictly in accordance with the Contractor's instructions, manuals and technical bulletins; and (iii) the Work was properly used for the purpose which it was intended and the defect arose from faulty materials in the Work, and was not caused by other machinery or apparatus; and (iv) the Client notified the Contractor in writing of the defect within fourteen (14) days of its discovery.

7.4 Notwithstanding the foregoing the Warranty will be void if the Work was either (i) repaired or serviced without permission of the Contractor; or (ii) repaired or serviced without review and authorisation by the Contractor; or (iii) repaired by using replacement parts not manufactured, delivered or approved by the Contractor; or (iv) modified without prior approval by the Contractor in writing.

7.5 In relation to the Warranty Work, the following additional costs and services are not covered by the Warranty and will be delivered by the Client free of charge or will be reimbursed by the Client to the Contractor at actual costs against documentary proof on first request (i) air travel (including boarding and lodging) and other transport and visa costs for the Contractor's personnel; and (ii) travelling and/or waiting and/or quarantining man hours; and (iii) costs for transport of parts by courier and surcharges for air transport of heavy parts; and (iv) general assistance by the Client's personnel and vessel's equipment during repairing or replacing of defective part of the Work; (v) provision of crane assistance, scaffolding, special tools, etc. at any location other than at the Contractor's premises; (vi) import duties and/or other duties, levies, demurrage, harbour and storage fees.

7.6 Upon Delivery, the liability of the Contractor for any defects, deficiencies or non-conformities in the Work and use or operation of the Equipment shall be limited to punch list items referred to in clause 5.5 and the obligations of this clause 7.

7.7 The Warranty set forth in this clause is the Client's sole and exclusive remedy, and is in lieu of any other terms, stipulations, conditions or warranties, whether oral, express or implied, including any statutory implied terms relating to quality, merchantability or fitness for purpose, arising out of the operation of law or otherwise. At the expiry of the Warranty Period, all obligations and liabilities with regards to the Contract and the Work shall end. Notwithstanding anything to contrary contained herein or in any Contract, in the event that the Work or Services include the performance of any crane operations, no warranty shall apply in respect thereof, other than that the Contractor shall provide reasonably skilled personnel to perform such Work or Services.

## 8 LIABILITIES & INDEMNIFICATIONS

8.1 Contractor Indemnities: The Contractor shall release, defend, protect, indemnify and hold harmless all members of the Client Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Contractor Group personnel; and (ii) any loss or damage to any member of the Contractor Group's property, except for the Equipment as from Delivery, regardless of possession or control of the Contractor Group's property by the Client Group.

8.2 Client Indemnities: The Client shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.

8.3 Consequential Loss: Notwithstanding anything to the contrary contained elsewhere herein, each of the Contractor and the Client shall, for and on behalf of themselves and their respective Group (Contractor Group or Client Group), save, release, defend, protect, indemnify and hold harmless the other Party and its respective Group from any claims for: (i) any consequential, incidental, indirect or exemplary damages of any kind or character; and/or (ii) loss of use, loss of profit, loss of revenue, loss of product, loss of or delayed production, loss of business opportunity arising out of, relating to or in connection with this Contract, the use, maintenance, and operation of the Work, and at law; and/or (iii) any pollution or contamination occurring in connection with the Work, except for pollution emanating from property of the Contractor Group (not including the Equipment as from Delivery); and no such claim shall be made by either the Contractor or the Client or its respective Group.

8.4 Limitation of Liability: Subject to clause 8.1, but notwithstanding any other provision to the contrary contained elsewhere herein, the Contractor Group's cumulative overall liability arising out of or in relation to this Contract, shall not, in any event, exceed a maximum overall amount equal to €2,500,000, or one hundred percent (100%) of the Contract Price (whichever is lesser) and the Client shall save, indemnify, defend and hold harmless the Contractor Group for any such claims in excess of any such percentage/amount.

8.5 If the Contractor is required to perform any part of the Work on the premises of another contractor or subcontractor of the Client and such other contractor or subcontractor requires that the Contractor declares itself liable towards and/or indemnifies such contractor or subcontractor for any costs, losses or damages, the Client hereby indemnifies the Contractor Group for any liability or exposure in excess of the indemnities or limitations of liability as included in this Contract. The provisions of this Contract will at all times have priority over any such arrangements between the Contractor and other contractors or subcontractors of the Client.

8.6 The Client shall indemnify the Contractor for any claims, demands or causes of action brought by any third party, regardless of the kind and irrespective of any claim in tort, under contract or otherwise at law,(including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.

8.7 All exclusions, limitations and indemnities contained in this clause 8 shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether expressed or implied), agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused and including pre-existing conditions or other theory of liability.

## 9 INSURANCES

9.1 The Client shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense, insurance of the types and limits of liability not less than those set forth below from sound and reputable insurers:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;

b. Employer's liability/Workman's Compensation insurance covering the Client's personnel for illness, personal injury or accidental death to the full extent required by applicable law;

c. Where the Work includes the modification, refurbishment of an existing vessel or equipment (or part thereof), a Construction All Risks insurance to cover the vessel and equipment to its full value; and

d. Insurance for the vessel, its appurtenances (including the Equipment) such as: Hull & Machinery, disbursement, war risks, P&I cover.

9.2 The Contractor shall support its contractual and legal liabilities assumed hereunder, including its indemnity obligations under clause 8 by maintaining at its own expense in full force and effect as a minimum the following insurances:

a. Comprehensive General Liability insurance covering personal injury (including death) and property damage;

b. Employer's liability/Workman's Compensation insurance covering the Contractor's personnel for illness, personal injury or accidental death to the full extent required by applicable law;

c. where the Work includes the construction of Equipment, a Construction All Risks insurance to cover the Equipment up to the full value of the Equipment up to the moment of Delivery. Any coverage under the insurances as set out herein shall not be deemed to waive, alter, increase or amend the Contractor's liability or limitation thereof.

9.3 The policies referred to in clause 9.1a up to and including clause 9.1d, clause 9.2a and clause 9.2c shall contain the appropriate waiver of rights of subrogation. The insurance policies referred to in clause 9.1c and d shall include the Contractor Group as additional insured.

## 10 CHANGES & VARIATIONS

In the event a Party requests a change to the scope of the Work and such proposed change would have an impact on the Contract Price and/or Delivery schedule of the Contract, the Contract shall be adjusted by way of a variation order to reflect the changes thereto. No variation shall be implemented without written agreement between both Parties.

## 11 CONFIDENTIALITY & INTELLECTUAL PROPERTY

11.1 "Confidential Information" means any and all: (i) disclosures, documents, photos, videos, animations, studies, drawings, concepts, models, inventions, specifications, patterns, know-how, commercial and/or technical information, or any intellectual property rights, relating to the Contract, the design or construction of the Equipment, Work and the price or Delivery thereof and (ii) any corporate, commercial or other business information; and (iii) all other data which should be reasonably assumed as being confidential.

11.2 All Confidential Information furnished by a Party shall remain the sole property of that disclosing Party and is submitted in confidence upon the condition that the receiving Party shall: (i) not use the Confidential Information, in whole or in part, for any purpose other than the performance of this Contract; and (ii) keep all Confidential Information strictly confidential; and (iii) not disclose or furnish the Confidential Information, in whole or in part, to any third party (except for any subcontractors or suppliers with a reasonable need to know) and only for the execution of the Contract. The receiving Party shall ensure that those subcontractors or suppliers to whom Confidential Information is disclosed shall observe the provisions of this clause 11 in all respects as if they were party to this Contract and the receiving Party shall be liable for a breach of any of the provisions of this clause 11 by any such person.

11.3 The receiving Party's obligations under the Contract shall not extend to Confidential Information which: (i) is in or enters the public domain without breach hereof by the receiving Party or its Group; or (ii) is lawfully in the possession of the receiving Party prior to the time of disclosure by the disclosing Party without binder of secrecy; or (iii) is completely independently acquired or developed by the receiving Party without the aid, reference to, application or use of Confidential Information, as to be demonstrated by the receiving Party with documentation; (iv) is obtained by the receiving Party from any third party that is lawfully in the possession of such information, but only if such disclosure of information to the receiving Party does not violate any contractual or legal obligation to disclosing Party on the part of such third party or does not breach a confidential relationship of such third party to disclosing Party, or; (v) is required to be disclosed under the order, judgement or ruling of a court of competent jurisdiction (provided that the receiving Party shall, unless prohibited by law, give written notice of such required disclosure to the disclosing Party prior to the disclosure).

11.4 The Parties agree that any losses occurring from breach of confidentiality are not considered an indirect or consequential loss and therefore shall not be excluded by clause 8.3; and that damages alone may not be sufficient to limit or prevent the harm suffered by the Contractor and that the Contractor is entitled to seek an order for injunctive relief.

11.5 The Contractor shall at all times remain the owner of any and all intellectual property rights relating to the Work and all rights, title and interest in Confidential Information or other intellectual property rights developed by the Contractor (whether or not in connection with the Work) shall exclusively vest in the Contractor. The Contractor shall have the sole right to file applications for patents, copyrights, trademarks or other intellectual property rights. The Contractor hereby grants to the Client a non-exclusive, royalty free, perpetual license to use such intellectual property rights to the extent necessary for the proper operation and maintenance of the Equipment.

## 12 COMPLIANCE

12.1 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant anti-bribery and anti-corruption legislation of the United States, the United Kingdom and any other country that is or may be or become relevant in respect of the Contact (together, the "Anti-Bribery Laws").

12.2 In carrying out its activities under the Contract, the Parties shall ascertain and comply with all applicable obligations and restrictions arising out of or following from any and all relevant sanctions and export controls legislation of the United Nations, the European Union, the United States and any other country that is or may be or become relevant in respect of the Contract (together, the "Trade Laws").

12.3 The Client guarantees, warrants and represents that the Equipment will be used solely for civil purposes and is not and will not be used for, or in connection with, any illicit purposes, including, but not limited to, activities involving torture or repression or other human rights violations, weapons of mass destruction or chemical, biological, radiological and/or nuclear activities.

12.4 The Parties will maintain adequate internal checks and procedures to monitor for suspicious activity and ensure compliance with the Trade Laws and the Anti-Bribery Laws.

12.5 The Client guarantees, warrants and represents that it will not directly or indirectly sell, deliver or provide the Equipment, or otherwise make the Equipment available, to any legal or natural person, entity, group or (government) organisation that is subject to sanctions or restrictions under the Trade Laws. Further the Client guarantees, warrants and represents that it will not conduct any business or execute and transaction in relation to the Equipment in any country for which specific sanctions or restrictions are in place.

12.6 The Parties shall act in conformity with the General Data Protection Regulation (EU) 2016/679. In addition, the Client shall comply with the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy' as attached to these Terms. The Client shall indemnify and hold harmless the Contractor from and against all costs and damages which may occur as a result of any breach by or on behalf of the Client, including but not limited to its employees and/or any third party which is engaged by the Client, of the provisions contained in this clause 12 and/or the provisions of the Contractor's 'Code of Conduct and Anti-Bribery and Corruption Policy'.

12.7 The Client will ensure that all obligations under this clause be passed on to any party that Client contracts in connection with the Contract or uses in its performance of the Contract, or that takes over any obligation, or part thereof. Upon request by the Contractor, the Client shall provide statement on end-use of the Equipment or the end-user of the Equipment.



Huisman 2021©

## 13 MISCELLANEOUS

13.1 The Client shall only be entitled to assign or novate the Contract to an affiliated company, with the Contractor's prior written approval, such approval not to be unreasonably withheld. Upon successful assignation or novation, the Contractor shall continue to execute the rights and obligations under the Contract and/or the Order, where applicable.

13.2 No changes or alternations shall be made to the Contract, the Work, the Terms or to any specifications of the Client unless agreed in writing by an authorised representative of each of the Parties.

13.3 No benefit or right accruing to either Party under the Contract or at law shall be deemed as waived, unless the waiver is in writing and signed by both Parties. The failure of either Party to exercise any of its rights under the Contract or at law shall in no way constitute a waiver of those rights, nor shall such failure excuse the other Party from any of its obligations under the Contract.

13.4 If in any legal proceeding, it is determined that any provision of this Contract is invalid or unenforceable under any applicable law such provision shall, insofar as it is severable from the remaining provisions, be deemed omitted from the Contract and shall in no way affect the validity or enforceability of the remaining provisions, which shall remain in full force and effect and the Contract shall be construed and enforced as if such provision had not been included. In such event, the Contractor shall propose alternative wording for such provision.

13.5 Except as specifically provided elsewhere in these Terms, this Contract shall not be construed to confer any benefit on any party not a Party to the Contract (or any agreement amending the Contract) or expressed to be supplemental hereto) nor shall it provide any rights to such party to enforce its provisions.

## 14 LAW AND DISPUTE RESOLUTION

14.1 The Contract (including all non-contractual liabilities or obligations arising therefrom) shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principals. For Work performed outside state waters, on the Outer Continental Shelf, or international waters, the interpretation and performance of the Work are governed by and to be construed in accordance with the general maritime laws of the United States or, if impermissible, with the laws of the State of Texas.

14.2 Any dispute arising out of or in connection with this Contract, including all non-contractual liabilities or obligations arising therefrom or any question regarding its existence, validity or termination, which cannot be amicably resolved, shall solely be referred to or brought before the state or federal courts located in Harris County, Texas. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts in any such action or proceeding and irrevocably waive the defences of lack of personal jurisdiction or any inconvenient forum to the maintenance of any such action or proceeding. No action for breach of this Contract may be brought against the Contractor more than twenty-four (24) months after the cause of action has arisen.



Huisman 2021©