**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ROBERTO HERNANDEZ** | **CASE NO. 6:24-CV-00912** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SWIFTSHIPPS LLC, ET AL.** | **MAGISTRATE JUDGE DAVID J. AYO** |

# RULING

Before the Court is a Motion for Summary Judgment [ECF No. 41] filed by Huisman North America Services, LLC ("Huisman"). Huisman seeks summary judgment on its cross-claim alleging that Ocean Services, LLC ("Ocean Services") owes indemnity, defense, contribution, and reimbursement for any and all of Plaintiffs' claims against Huisman. For the reasons that follow, the motion is DENIED.

## I. BACKGROUND

Plaintiff Roberto Hernandez ("Hernandez") alleges that while he was working aboard the M/V OCEAN INTREPID (the "Vessel") on August 11, 2023, a cable from a mechanical crane aboard the Vessel snapped and struck him from behind, causing serious bodily injuries.[1] The defendants named in the amended complaint include Ocean Services, the company responsible for arranging and managing repairs and refitment of the Vessel, and Huisman.[2] Hernandez alleges that

[1] ECF No. 24 at 3.
[2] *Id.* at 2.

Huisman's employees, while they were performing crane maintenance and repairs on the Vessel, caused the cable from a mechanical crane to snap and strike him.[3]

On June 2, 2025, Huisman sent a letter to Ocean Services demanding it defend and indemnify Huisman from Hernandez's personal injury claims under the terms of the contract between Huisman and Ocean Services.[4] Ocean Services did not respond to the tender and on July 1, 2025, Huisman filed a cross-claim against Ocean Services, alleging that Ocean Services owes indemnity, defense, contribution, and reimbursement for any and all of Hernandez' claims arising of out Huisman's work on the crane aboard the Vessel.[5] Huisman now moves for summary judgment on its cross-claim.

**A. The Relevant Agreements**

In August 2022, Ocean Services requested that Huisman provide a quotation for certain repairs and maintenance to a mast crane aboard the Vessel while it was drydocked in Tampa, Florida.[6] Huisman responded with two separate quotations for the requested work—one for Huisman to "Replace Conveyor Cable," and one for the performance of "2023 Maintenance."[7] Both quotations indicated that the "Huisman General Terms and Conditions of Sale 2021" attached would exclusively apply.[8] Ocean Services answered Huisman's quotations with Purchase Order No. 511816, outlining Ocean Services' offer to contract with Huisman for the performance of the specified repairs and maintenance.[9] Huisman responded with two order confirmations—one confirming Huisman's agreement to "Replace Conveyor Cable," and one confirming Huisman's

---

[3] *Id.* at 4.
[4] ECF No. 41-2 at 56-57.
[5] ECF No. 33 at 4-8.
[6] ECF No. 41-2 at 1.
[7] *Id.* at 4-19.
[8] *Id.* at 7, 15.
[9] *Id.* at 20.

agreement to perform "2023 Maintenance."[10] Both order confirmations enclosed a copy of the "Huisman General Terms and Conditions of Sale 2021" and indicated that those terms would exclusively apply.[11]

Pursuant to the contracts, Huisman's work aboard the Vessel was completed while it was drydocked in Tampa, Florida.[12] While Huisman was finishing the work, its employees discovered that a visualization computer on the crane was malfunctioning.[13] In July 2023, the Vessel sailed to the shipyard in Amelia, Louisiana, where Ocean Services requested that Huisman send an engineer to repair the computer aboard the Vessel.[14] On or about August 11, 2023, a Huisman engineer boarded the Vessel to repair the crane's computer.[15]

On August 22, 2023, after Huisman completed the visualization computer assessment and repair, Huisman sent Ocean Services a quotation numbered 400-Q38645 (the "August 22 Quotation") for "PIP 6-1 Repair," which invoiced the computer repairs performed on August 11, 2023.[16] The August 22 Quotation enclosed a copy of the "Huisman General Terms and Conditions of Sale 2021" and indicated that those terms would exclusively apply.[17] On August 25, 2023, Huisman sent an order confirmation to Ocean Services for the repair work, along with two other order confirmations for "the remaining scope of work."[18] In response, Stabbert Maritime Holding, LLC ("Stabbert"), the parent company of Ocean Services, advised that it had decided not to continue with the remaining scope of work, and that it wanted the visualization computer

---

[10] *Id.* at 21-38.
[11] *Id.* at 24-28, 33-38.
[12] ECF No. 41-1 at 4; ECF No. 46 at 4.
[13] ECF No. 46-1 at 1-2.
[14] *Id.* at 2.
[15] *Id.* at 2.
[16] ECF No. 41-2 at 39-46. Neither party disputes that the August 22 Quotation invoiced the computer repairs performed in Amelia, Louisiana on August 11, 2023.
[17] ECF No. 41-2 at 41-46.
[18] ECF No. 46-1 at 2.

assessment and repair to be invoiced under a new purchase order.[19] Ocean Services then sent Huisman Purchase Order No. 512067 (the "August 25 Purchase Order"), which referenced the August 22 Quotation.[20] On August 28, 2023, Huisman responded with an order confirmation (the "August 28 Order Confirmation"), confirming Huisman's acceptance of the August 25 Purchase Order.[21] The August 28 Order Confirmation enclosed a copy of the "Huisman General Terms and Conditions of Sale 2021" and indicated that those terms would exclusively apply.[22] The parties do not dispute that these documents constitute a contract for the crane computer repairs performed on the Vessel on August 11, 2023 (the "Repair Contract"). The parties also do not dispute that the "Huisman General Terms and Conditions of Sale 2021" were included in the Repair Contract.

The "Huisman General Terms and Conditions of Sale 2021" (hereinafter "Huisman General Terms and Conditions") include an indemnity provision, stating:

> 8.2 Client Indemnities: [Ocean Services] shall release, defend, protect, indemnify and hold harmless all members of the Contractor Group [including Huisman] from and against any claims for: (i) any illness, injury or death suffered by any member of the Client Group personnel; and (ii) any loss or damage to any member of the Client Group's property, including the Equipment as from Delivery, regardless of possession or control of the Client Group's property by the Contractor Group. For the avoidance of doubt, the vessel and its appurtenances shall be considered the Client Group's property and risk at all times.[23]

"Client Group," as the term is used in the Huisman General Terms and Conditions, is defined in Section 1.2 to include all of Ocean Services' sub-contractors' employees, including Hernandez.[24] The terms also state:

> 8.6 [Ocean Services] shall indemnify [Huisman] for any claims, demands or causes of action brought by any third party, regardless of its kind and irrespective

---

[19] *Id.*

[20] The August 25 Purchase Order references Huisman Quotation No. 00400-Q38645 (the August 22 Quotation). ECF No. 41-2 at 47.

[21] ECF No. 41-2 at 48-55.

[22] *Id.* at 51-55.

[23] *Id.* at 53.

[24] *Id.* at 52.

> of any claim in tort, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, howsoever and whatsoever caused.
>
> 8.7 All exclusions, limitations and indemnities contained in this clause shall apply irrespective of cause and regardless of whether or not caused or brought about by either Party's or their respective Group's negligence (including sole, joint, concurrent or otherwise), breach of warranty (whether express or implied) agreement, statute, strict liability or otherwise, under contract or otherwise at law, (including negligence, breach of contract or statutory duty), by way of indemnity or otherwise, however, and whatsoever caused and including pre-existing conditions or other theory of liability.[25]

## II.
## THE SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[26] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[27] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[28] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[29]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe,

---

[25] *Id.* at 53.
[26] FED. R. CIV. P. 56(a).
[27] *Id.*
[28] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[29] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[30] "Credibility determinations are not part of the summary judgment analysis."[31] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[32]

## III.
## CHOICE OF LAW

Ocean Services argues that the Repair Contract is governed by Texas law because it is maritime in nature and includes a choice-of-law provision. According to Ocean Services, this provision is enforceable under federal maritime choice-of-law rules. The Court agrees.

First, the Repair Contract is governed by maritime law. To determine whether a contract is a maritime contract, "the answer depends upon . . . the nature and character of the contract, and the true criterion is whether it has reference to maritime service or maritime transactions."[33] The Fifth Circuit has held that that "a contract for the repair of a vessel is a maritime contract, governed by general maritime law."[34] Additionally, the Fifth Circuit generally characterizes repair work on an appurtenance of a vessel, such as a crane attached to the vessel, as "vessel repair services."[35] Here, it is undisputed that the Repair Contract is for maintenance and repair services to a crane

---

30 *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (the court must view all facts and evidence in the light most favorable to the non-moving party).
31 *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
32 *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
33 *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 24 (2004) (internal quotations and citation omitted).
34 *One Beacon Insurance Co. v. Crowley Marine Services Inc.*, 648 F.3d 258, 262 (5th Cir. 2011).
35 *Baloney v. Ensco Offshore Co.*, 570 Fed. Appx. 423, 427 (5th Cir. 2014) (finding that repair work "on an appurtenance of the vessel such as a crane is characterized as 'vessel repair services' and is therefore maritime work").

aboard the Vessel while it was docked in Amelia, Louisiana. Thus, the Repair Contract is governed by maritime law.

Second, under federal maritime law, choice-of-law provisions are presumptively valid and enforceable except when the chosen law would contravene a federal statute or conflict with established federal maritime policy.[36] Here, the Huisman General Terms and Conditions include a choice-of-law provision stating that the Repair Contract "shall be governed by and construed in accordance with the laws of the State of Texas, excluding conflicts of law principles." Neither party contends that an exception applies to overcome the presumption of enforceability. Accordingly, Texas law applies to the interpretation of the Repair Contract.

## IV.
## ANALYSIS

Huisman argues that the Repair Contract's indemnity provision is unambiguous, valid, and enforceable under Texas law. Ocean Services argues, however, that the indemnity provision does not comply with Texas fair notice requirements and is thus not enforceable against it.

Under Texas law, general rules of construction are applied to indemnity provisions, and courts are primarily concerned with giving effect to the parties' intent as expressed in the contract.[37] In determining the parties' intent, the contract's terms are given "their plain, ordinary, and generally accepted meaning unless the contract shows them to be used in a technical or different sense."[38] "Only where a contract is ambiguous may a court consider the parties' interpretation and 'admit extraneous evidence to determine the true meaning of the instrument.'"[39]

---

[36] *Great Lakes Ins. SE v. Raiders Retreat Realty Co., LLC*, 601 U.S. 65, 70, 76 (2024).
[37] *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 353 (Tex. 2020); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000).
[38] *Marathon E.G. Holding Ltd. v. CMS Enters. Co.*, 597 F.3d 311, 316 (5th Cir. 2010).
[39] *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. CBI Indus., Inc.*, 907 S.W. 2d 517, 520 (Tex. 1995)).

A contract is ambiguous if "its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning."[40] If the terms of a contract "can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law."[41]

Because indemnity agreements call for extraordinary shifting of risk between the parties, Texas law dictates that such provisions are subject to fair notice requirements, including the express negligence doctrine and conspicuousness requirement.[42] Under the express negligence doctrine, "a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract."[43] The conspicuousness requirement mandates "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it."[44] Compliance with the fair notice requirements is a question of law for the Court.[45]

**A. Express Negligence**

The express negligence requirement prevents a party from drafting an ambiguous provision that conceals its intent to shift the costs of its own wrongdoing to a contracting counterparty.[46]

---

[40] *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted).

[41] *Id.*

[42] *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). The fair notice requirements are limited to indemnity agreements that relieve a party in advance of liability for its own negligence. *Id.* at 507 n. 1. While the August 22 Quotation and the August 28 Order Confirmation attaching the Huisman General Terms and Conditions were sent *after* the alleged incident on August 11, 2023, the Repair Contract was not created for the purpose of indemnifying Huisman for liability arising from the incident. Because the Repair Contract did not contemplate the incident, the fair notice requirements apply to the indemnity provision.

[43] *Dresser*, 853 S.W.2d at 508.

[44] *Id.* (citation omitted).

[45] *Id.* at 509.

[46] *Hil-Tech, LLC v. Shree Mahalaxmi Indus.*, No. 4:22-CV-02310, 2023 WL 8439145, at *4 (S.D. Tex. Oct. 27, 2023), report and recommendation adopted, No. 4:22-CV-02310, 2023 WL 8437637 (S.D. Tex. Dec. 4, 2023) (citing *Houston Lighting & Power Co. v. Atchison, Topeka, & Santa Fe Ry. Co.*, 890 S.W.2d 455, 458 (Tex. 1994)).

"Language globally requiring indemnity for all losses, claims, or liabilities is not sufficient to trigger an obligation to indemnify for another's own negligence or strict liability."[47] Under Texas law, "[e]xtrinsic evidence cannot be used to show that the parties could have meant, that the parties probably meant, or could have meant, something other than what their agreement stated."[48]

Ocean Services argues that the express negligence requirement is not met because it did not intend to indemnify Huisman for liability arising out of the crane repairs performed on August 11, 2023. It does not argue, however, that the language of the indemnity provision fails to explicitly state that Ocean Services would be liable for Huisman's negligence. It rather argues that the parties' actions in confecting the documents to which the indemnity provision was attached show that Ocean Services did not intend to indemnify Huisman for its alleged negligence on August 11, 2023. Specifically, it argues that because the August 28 Order Confirmation was sent after the crane repair work was completed on August 11, 2023, Ocean Services clearly did not intend for the August 28 Order Confirmation to apply retroactively to the incident on August 11, 2023. The Court disagrees.

It is undisputed that the August 22 Quotation invoiced the crane repairs performed on August 11, 2023 in Amelia, Louisiana.[49] The August 25 Purchase Order sent by Ocean Services references the August 22 Quotation and contains the same scope and price of repair work performed by Huisman on August 11, 2023.[50] The August 28 Order Confirmation then confirms

---

[47] *Hil-Tech, LLC*, 2023 WL 8439145, at *4; *see also Safeway, Inc. v. PDX, Inc.*, 676 F. App'x 229, 234 (5th Cir. 2017) (per curiam) (finding that a provision stating the licensee would indemnify the licensor "from any and all loss, damage, or expense (or claims of damage or liability)" did not "express, in specific terms, an intent to indemnify [licensor] for its own negligence").
[48] *First Bank v. Brumitt*, 519 S.W.3d 95, 110 (Tex. 2017) (citing *Anglo–Dutch Petroleum Int'l, Inc. v. Greenberg Peden, P.C.*, 352 S.W.3d 445, 451 (Tex. 2011)).
[49] ECF No. 46 at 4.
[50] The August 25 Purchase Order references Huisman Quotation No. 00400-Q38645 (the August 22 Quotation), and describes the same scope of work at a total cost of $31,408.50. ECF No. 41-2 at 47; 39-46.

the August 25 Purchase Order for such repair work.[51] Based on these documents, the Court finds that the parties intended for the August 28 Order Confirmation, and the attached Huisman General Terms and Conditions, to apply to the crane repair work performed on August 11, 2023.

Additionally, the indemnity agreement contained in the Huisman General Terms and Conditions explicitly states that Ocean Services agrees: (1) to indemnify Huisman for any claims for injury by a member of Ocean Services' sub-contractors' employees (including Hernandez), (2) to indemnify Huisman for any third-party claim "regardless of its kind and irrespective of any claim in tort, under contract or otherwise at law, (including negligence, breach of contract or statutory duty)," and, most importantly, (3) that the indemnity provision would "apply irrespective of cause and regardless of whether or not caused or *brought about by either Party's or their respective Group's negligence*."[52] Because the language of the indemnity provision unambiguously requires Ocean Services to indemnify Huisman for claims that arise out of its own negligence, the express negligence requirement is met.

### B. Conspicuousness

Under Texas law, an indemnity clause included in a contract must be presented so that "a reasonable person against whom a clause is to operate ought to have noticed it."[53] "For example, language in capital headings, language in contrasting type or color, and language in an extremely short document, such as a telegram, is conspicuous."[54] Texas courts "determine conspicuousness by examining how the language in question compares to other provisions in the same contract."[55]

---

[51] ECF No. 41-2 at 48.

[52] *Id.* at 53 (emphasis added).

[53] *Dresser*, 853 S.W.2d at 511, *see also McGehee v. Certainteed Corp.*, 101 F.3d 1078, 1080 (5th Cir. 1996).

[54] *Dresser*, 853 S.W.2d at 511.

[55] *Mission Clay Prods., LLC v. L.A. Fuller & Sons Constr., LTD*, No. 07-24-00251-CV, 2025 WL 2089315, at *2 (Tex. App.—Amarillo July 24, 2025) (citing *In re Key Equip. Fin. Inc.*, 371 S.W.3d 296, 301 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding)).

Huisman argues that the indemnity provision is conspicuous because: (1) Ocean Services was provided the Huisman General Terms and Conditions at least six times, (2) all quotations and order conformations sent to Ocean Services clearly stated that the Huisman General Terms and Conditions would exclusively apply, and (3) the heading of the indemnity provision is in all capital letters, is larger than the text of the provision, and is in a contrasting blue font. The Court disagrees.

First, providing Ocean Services with the Huisman General Terms and Conditions multiple times does not make the indemnity provision itself conspicuous.[56] Second, the statement included in Huisman's quotations and order confirmations that the Huisman General Terms and Conditions would exclusively apply does not make the indemnity provision itself conspicuous. Nothing about the statement indicated that the parties were entering into an indemnity agreement.[57]

Third, there is nothing about the indemnity provision itself that distinguishes it from the other thirteen provisions included in the Huisman General Terms and Conditions. The indemnity provision is in small print, it is the eighth of fourteen clauses, and is found halfway down the second page. While the heading has a different size, color, and font type than the text of the indemnity provision, it is surrounded by provisions with headings and text with identical size, color, and font size.

Texas courts have held that indemnity provisions with the same size, color, and font size as surrounding clauses are not conspicuous. In *Mission Clay Products*, the appellate court held that an indemnity provision was not conspicuous, even though its heading was in all capital letters, because the headings of all the other provisions on the same page were also capitalized.[58]

---

[56] Huisman does not argue that Ocean Services had actual knowledge of the indemnity provision.

[57] *See U.S. Rentals, Inc. v. Mundy Serv. Corp.*, 901 S.W.2d 789, 792 (Tex. App.—Houston [14th Dist.] 1995), writ denied (Dec. 7, 1995) (finding that a statement on the front of a contract stating that, by accepting delivery, the renter "agrees to all terms and conditions" in the rental contract did not sufficiently alert renters that they were entering into an indemnity agreement).

[58] *Mission Clay Prods., LLC*, 2025 WL 2089315, at *2.

Additionally, the indemnity provision was the tenth of twenty unrelated provisions, appeared in small print on the fourth page, and was surrounded by unrelated clauses with headings and text that looked the same.[59] Similarly, in *US Rentals*, the appellate court held that an indemnity provision was not conspicuous because it was the seventh of fifteen unrelated provisions on back of the contract and the headings and text of all provisions were printed in the same respective font sizes and types.[60] The court noted that the indemnity provision "was no more visible than any other provision on the back of the page."[61]

Here, the headings and text of all fourteen provisions in the Huisman General Terms and Conditions have the same respective font size, color, and type. Under these circumstances, nothing "on the face of the [indemnity provision] attract[s] the attention of a reasonable person when he looks at it."[62] Thus, the indemnity provision is inconspicuous as a matter of law.

Because Ocean Services lacked fair notice of the indemnity provision, the indemnity provision is not enforceable against Ocean Services. Accordingly, the motion for summary judgment is denied.

## V.
## CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that the Motion for Summary Judgment [ECF No. 41] filed by Huisman is DENIED.

---

[59] *Id.*
[60] *U.S. Rentals, Inc.*, 901 S.W.2d at 792.
[61] *Id.*
[62] *See Dresser*, 853 S.W.2d at 508.

IT IS FURTHER ORDERED that Huisman's Cross-Claim against Ocean Services, LLC is DISMISSED.

THUS DONE in Chambers on this 25th day of August, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE