**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **ROBERTO HERNANDEZ, ET AL.** | **CASE NO. 6:24-CV-00912** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **SWIFTSHIPS LLC, ET AL.** | **MAGISTRATE JUDGE DAVID J. AYO** |

# RULING

The present matter before the Court is a Motion for Summary Judgment on Liability[1] and Motion for Partial Summary Judgment on Loss of Consortium Claims[2] filed by Defendant Ocean Services, LLC. For the following reasons, the Court DENIES both motions.

## I.
## Background

On August 11, 2023, Plaintiff Roberto Hernandez was taking a break from work on the rear deck of the M/V OCEAN INTREPID, when he alleges a cable from the ship's crane snapped and struck him, causing injury.[3] The INTREPID is owned and operated by Defendant Ocean Services, LLC ("Ocean Services").[4] Hernandez was employed as a welder/fitter for Alliance Mechanical Solutions ("AMS") and was aboard the vessel pursuant to a welding and fitting services contract between AMS and Ocean Services.[5] At the time of the incident, the INTREPID was docked in Amelia, Louisiana for repairs.[6] One of the ongoing repairs involved maintenance to the computer system that controlled a large offshore "mast crane" on the rear deck of the vessel.[7] [See Figure 1 below] One of the functions of the computer system was to signal an alarm when

---

[1] ECF No. 50.
[2] ECF No. 51.
[3] ECF No. 50-2 at 2; ECF No. 55-1 at 1.
[4] ECF No. 50-2 at 1; ECF No. 55-1 at 1.
[5] ECF No. 50-2 at 1; ECF No. 55-1 at 1.
[6] ECF No. 50-2 at 1; ECF No. 55-1 at 1.
[7] ECF No. 50 at 4.

the crane's cable tension limit was reached; that function had malfunctioned so that no such alarm sounded.[8] That morning, a technician from the crane manufacturer, Defendant Huisman North America Services, LLC ("Huisman"), was aboard the ship to perform tests on the computer system.[9] Also aboard the ship was Ocean Services' crane operator, Orlando Hernandez ("Orlando"), whom Plaintiffs allege was the only person on board permitted to operate or maneuver the INTREPID's crane.[10]



Figure 1 – Image of M/V OCEAN INTREPID

At the time of the accident, Hernandez was taking a break underneath the crane's 180-foot boom.[11] Orlando maneuvered the crane so that the Huisman technician could test the computer system.[12] During the testing, the crane's cable reached its tension limit. Because of the computer malfunction, the tension alarm did not sound, and the cable snapped, allegedly striking and injuring Hernandez.[13]

[8] *Id.* at 4; ECF No. 55 at 5–6.
[9] ECF No. 50 at 4.
[10] ECF No. 50 at 4; ECF No. 55 at 5.
[11] ECF No 55-6 at 92, 96.
[12] ECF No. 50 at 5.
[13] *Id.*; ECF No. 55 at 6–7.

Hernandez and his wife Claudia bring suit for personal injuries under general maritime law through the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b), alleging vessel negligence by Ocean Services and negligence by Huisman.[14] They seek damages for pain and suffering, medical expenses, and as to Mrs. Hernandez, loss of consortium, society, and services caused by the injury to her husband.[15] Before the court are Ocean Services' motions for partial summary judgment on non-pecuniary damages[16] and summary judgment on liability.[17]

## II.
## Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[18] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[19] At the summary judgment stage, the Court must view the evidence and the inferences drawn from such evidence in the light most favorable to the non-movant.[20] If the evidence viewed in such light would allow a reasonable factfinder to find in favor of the non-movant, there is a genuine dispute of material fact.[21]

On issues where the movant bears the burden of proof at trial, they must affirmatively demonstrate the lack of a genuine dispute of material fact.[22] Where the non-movant bears the burden at trial, the movant may simply point to an absence of evidence.[23] At that point, the non-

[14] ECF No. 24 at 1; *see discussion infra* Section III.B.
[15] ECF No. 24 at 4.
[16] ECF No. 51.
[17] ECF No. 50.
[18] Fed. R. Civ. P. 56(a).
[19] *Id.*
[20] *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[22] *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994).
[23] *Id.*

movant must then prove a genuine dispute of material fact through competent summary judgment evidence.[24] If they fail to do so, summary judgment must be granted.[25]

## III.
## MOTION FOR SUMMARY JUDGMENT ON LIABILITY[26]

### A. Sham Affidavit Doctrine

As a preliminary matter, Ocean Services asks the court to disregard the declaration Hernandez submitted to support his opposition to the present motion.[27] Ocean Services asserts that the affidavit is a sham and should not be considered under the "sham affidavit doctrine."[28]

The sham affidavit doctrine prevents malfeasance at the summary judgment stage of proceedings by empowering district courts to refuse consideration of affidavit statements "'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'"[29] This is a high bar, and the doctrine should be applied sparingly, only where a court finds the affidavit "inherently inconsistent" with prior testimony.[30] Where statements "can be 'reconciled,' there is no sham."[31]

Here, Ocean Services points to four statements that supposedly render Hernandez's declaration a sham in light of purported inconsistencies with his prior deposition testimony.[32] These statements concern a lack of day-of warnings regarding Ocean Services' plan to test or move the crane.[33] To support its "sham" argument, Ocean Services contrasts the statements in the

---

[24] *Id.*
[25] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).
[26] ECF No. 50.
[27] ECF No. 64 at 1.
[28] *Id.*
[29] *Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).
[30] *Id.*
[31] *Id.* at 473 (quoting *Robinson v. Nexion Health*, 671 F. App'x 344, 344 (5th Cir. 2016).
[32] ECF No. 64 at 3.
[33] *Id.*

declaration with excerpts from Hernandez's deposition.[34] Specifically, Ocean Services takes issue with the following declaration statements:

> (1) No one from Ocean Services or from any other company ever told me that the crane would be tested or operated on August 11, 2023[;]
> (2) No one ever told me that the area beneath the crane or its boom was off limits, restricted, or dangerous on that day[;]
> (3) I did not hear any horn, alarm, whistle, radio call, or announcement warning that the crane was about to be moved or tested. I was not given a radio, and no one came to the area where we were working to tell us that the crane was about to be operated[;]
> (4) No one ever told me that the crane would be tested or operated on August 11, 2023, or that its boom would be moved while we were working on the deck.[35]

In the excerpted portion of the deposition, Hernandez states that he was told to "be careful . . . with everything up there, it's not safe," because "they were doing repairs on the crane."[36] This testimony can be reconciled with the declaration statements. The deposition testimony speaks to general warnings—the crane area was "not safe," so Hernandez should "be careful with everything there" —issued at a non-specified time before the incident.[37] Further, Hernandez's testimony—that he was generally aware repairs were being performed on the crane—does not contradict his declaration statements that he was unaware the crane would be tested, operated, or moved *on the day of the incident*.[38] Because these statements are by no means "so markedly inconsistent" with deposition testimony that the declaration "constitute[s] an obvious sham[,]" the declaration can be considered at the summary judgment stage.[39]

---

[34] *Id.* (quoting from ECF No. 50-3 at 89–90).
[35] ECF No. 64 at 3 (numeration added) (quoting ECF No. 55-4 at 16–17).
[36] *Id.* (quoting ECF No. 50-3 at 89–90).
[37] *Id.*
[38] *See id.*
[39] *Clark*, 854 F.2d at 766.

### B. *Scindia* Duties

LHWCA § 905(b) "preserved" longshore workers' right to recover from vessel owners for negligence.[40] Accordingly, a § 905(b) suit is the vehicle for asserting general maritime tort claims against vessel owners for the personal injury of a longshore worker.[41] To prevail on such maritime tort claims, a plaintiff must prove an injury caused by the breach of a duty owed to the worker by the vessel owner. First outlined by the Supreme Court in *Scindia* and expanded upon by courts in the years since, the relevant duties are: (1) the turnover duty; (2) the active control duty; and (3) the duty to intervene.[42] Hernandez's Opposition states that he is grounding his claims on an alleged breach of the "active control" duty and not the other two *Scindia* duties.[43] "The active control duty applies once stevedoring operations have begun and imposes liability on the shipowner 'for injury caused by hazards under the control of the ship.'"[44] Liability under this duty may arise for longshore worker injuries caused by vessel negligence when the owner: (1) actively involves itself in operations; or (2) fails to exercise reasonable care to protect workers from hazards "in areas, or from equipment, under the active control of the vessel during the stevedoring operation."[45] There is no exception under this duty for open and obvious hazards.[46]

Ocean Services argues that it did not breach this duty because it did not exercise "active control over the actual methods and operative details of [Hernandez's] work."[47] The summary judgment record does show that Hernandez was taking a break at the time of the accident, and there is no suggestion in the record that Ocean Services exercised control over "the actual methods

[40] *Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156, 165 (1981).
[41] *Id.*; *see Clay v. Daiichi Shipping*, 74 F. Supp. 2d 665, 668–69 (E.D. La. 1999).
[42] *Manson Gulf, L.L.C. v. Modern Am. Recycling Serv., Inc.*, 878 F.3d 130, 134 (5th Cir. 2017).
[43] ECF No. 55 at 9–10.
[44] *Renteria v. Grieg Star AS*, 168 F.4th 775, 782 (5th Cir. 2026) (quoting *Alvarado v. Briese Schiffahrts GmbH & Co. KG MS Sapphire*, 161 F.4th 289, 296 (5th Cir. 2025)).
[45] *Id.* (quoting *Scindia*, 451 U.S. at 167).
[46] *Id.*
[47] ECF No. 64 at 8 (quoting *Alvarado*, 161 F.4th at 296).

and operative details of [his] work." The record, however, shows that Ocean Services' crane operator was at the controls and maneuvering the crane when the cable snapped and allegedly struck and injured Hernandez. Hernandez also points to evidence that the captain of the vessel was aware of the computer malfunction and that this malfunction made the tension alarm inoperable. Hernandez argues that, despite defendant's knowledge that the alarm was inoperable, defendant's crane operator allowed sufficient tension on the crane cable to cause it to snap.[48] This evidence creates a triable issue as to whether Ocean Services failed to exercise reasonable care to protect Hernandez from hazards in an area it controlled. Accordingly, Ocean Service's Motion for Summary Judgement on Liability is denied.

## IV.
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON NON-PECUNIARY DAMAGES[49]

The Court now turns to Ocean Service's Motion for Partial Summary Judgment on Non-Pecuniary Damages. Ocean Services argues that nonpecuniary damages—specifically, Mrs. Hernandez's loss of consortium damages—are precluded as a matter of law.[50] In *Moore v. M/V ANGELA*,[51] the Fifth Circuit held that loss of consortium damages are available in cases where, as here, longshore workers are injured in territorial waters. The *Moore* court cited *Sea-Land Servs. v. Gaudet*[52] and *Nichols v. Petroleum Helicopters, Inc.*[53] as support.[54] Ocean Services argues that (1) *Moore* was wrongly decided because, *inter alia*, the Supreme Court in *Miles v. Apex Marine*

---

[48] Ocean Services argues that Hernandez and other workers were warned of the dangers posed by the crane repairs and that the pedestal of the crane was set off by protective barriers. ECF No. 64 at 5–7; ECF No. 50-1 at 18–19. Ocean Services seems to suggest that Hernandez did not heed these warnings by taking his break underneath the boom of the crane. However, as Figure 1 illustrates, the boom of the crane towered over a large portion of the vessel. There is no evidence that shows that Hernandez took his break inside any barrier surrounding the pedestal of the crane.
[49] ECF No. 51.
[50] *Id.*
[51] 353 F.3d 376 (5th Cir. 2003).
[52] 414 U.S. 573 (1974).
[53] 17 F.3d 119 (5th Cir. 1994).
[54] *Moore*, 353 F.3d at 383.

*Corp.*[55] condemned *Gaudet* "to a kind of legal limbo,"[56] and (2) even if *Moore* is good law, it is distinguishable from this case.[57]

As to Ocean Service's first argument, this Court is not free to disregard binding Fifth Circuit precedent based solely on the argument that it was wrongly decided.[58] *Moore* has not been overruled and remains good law. Ocean Services' argument that *Miles* undermined *Gaudet* and in turn, *Moore*, ignores the fact that *Moore* was decided *after Miles* but nevertheless treated *Gaudet* as good law with respect to the question of non-pecuniary damages. While it is true that the Supreme Court in *Miles* stated in a footnote that *Gaudet* had been rendered inapplicable on its facts because of the 1972 amendments to the LHWCA, *Miles* did not condemn *Gaudet* to a meaningless existence.[59] Rather, it simply recognized that like *Moragne v. States Marine Lines, Inc.*[60]—which created a general maritime wrongful death action—*Gaudet* could not have been heard in court at the time *Miles* was decided.[61] Both *Moragne* and *Gaudet* were suits by longshore workers based on unseaworthiness.[62] And because the 1972 amendments to the LHWCA "bar[red] any recovery from shipowners for the death or injury of a longshoreman or harbor worker resulting from breach of the duty of seaworthiness," each suit "would be foreclosed by statute" if brought when *Miles* was decided.[63] Crucially, the Supreme Court in *Miles* "decline[d] to limit *Moragne* to its facts" and explicitly extended *Moragne* by applying it to Jones Act seamen in addition to longshore workers.[64] The Supreme Court also recognized that while *Gaudet* had been rendered inapplicable

[55] 498 U.S. 19 (1990).
[56] ECF No. 65 at 3.
[57] *Id.* at 3–7.
[58] *Cf. Ford v. McKesson*, 171 F.4th 332, 343 (5th Cir. 2026) (District Courts cannot overturn Fifth Circuit precedent even if it appears to have been implicitly overruled by the Supreme Court).
[59] *Miles*, 498 U.S. at 30 n.1.
[60] 298 U.S. 375 (1970),
[61] *Miles*, 498 U.S. at 28.
[62] *Id.*
[63] *Id.*
[64] *Id.* at 27, 30.

on its facts, it still had continuing vitality to the extent that it "applies only in territorial waters, and it applies only to longshoremen"—which is the present case.[65]

Alternatively, Ocean Services argues that *Moore* is distinguishable because, unlike the present case, it was a wrongful death action. Neither the Supreme Court nor the Fifth Circuit have recognized such a distinction. To the contrary, the Fifth Circuit has explicitly stated that *Miles* left intact the availability of loss of consortium damages for injuries and deaths of longshoremen in territorial waters.[66] *Moore* itself speaks in terms of *injury*.[67] Ocean Services provides no compelling reason to distinguish *Moore* on this basis.

Ocean Services similarly suggests that *Moore* is distinguishable because it is not sufficiently clear that the plaintiff in *Moore* was injured in territorial waters. The Court disagrees. The injury in *Moore* occurred during stevedoring operations,[68] and the court reasoned that "[t]he loss of consortium award is permissible in this § 905(b) case. [*Gaudet* and *Nichols*] each allowed non-pecuniary damages for longshoremen *injured in territorial waters*."[69] This suggests to the Court that the plaintiff in *Moore* was injured in territorial waters and that its holding in that regard is applicable to the present case.

Ocean Services also relies on a series of district court cases to support its argument that there is a "trend" in the courts towards barring nonpecuniary recovery in maritime cases. All of these cases are distinguishable, most predate both *Nichols* and *Moore*, and only one was decided after *Moore*.[70] Curiously, some of these cases cited by Ocean Services in support of its proposition

---

[65] *Id.* at 31; *Rutherford v. Mallard Bay Drilling L.L.C.*, No. CIV A 99-3689, 2000 WL 805230, at *4 (E.D. La. June 21, 2000) (recognizing that "the Fifth Circuit has … affirmed the continuing vitality of Gaudet….").
[66] *Nichols*, 17 F.3d at 123.
[67] *Moore*, 353 F.3d at 383.
[68] *Id.* at 379–80.
[69] *Id.* at 383 (emphasis added).
[70] *Robertson v. Arco Oil & Gas Co.*, 766 F. Supp. 535 (W.D. La. 1991) (longshoreman injured outside territorial waters); *Hollie v. Consol. Nat. Gas Serv. Co.*, No. 91-cv-0608, 1993 WL 22191 (E.D. La. Jan. 1, 1993) (longshoreman injured outside territorial waters); *Means v. Tidewater Grand Isle, Inc.*, No. 92-cv-1589, 1993 WL

that loss of consortium damages are not available to longshoremen injured in territorial waters state exactly the opposite.[71] The one Louisiana case Ocean Services cites is an intermediate state appellate court case that also predates *Nichols* and *Moore.*[72] This lone state court case does not overcome the binding Fifth Circuit authority in *Moore* supporting the award of non-pecuniary damages.

Because the Fifth Circuit expressly allows the recovery of loss of consortium damages in LHWCA § 905(b) cases where, as here, the plaintiff was a longshoreman injured in territorial waters, the Court DENIES Ocean Services' Motion for Partial Summary Judgment.

## V.
## CONCLUSION

For the foregoing reasons, the Court DENIES the Motion for Summary Judgment on Liability [ECF No. 50] and the Motion for Partial Summary Judgment on Loss of Consortium Claims [ECF No. 51].

THUS DONE in Chambers on this 12th day of November, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

149073 (E.D. La. May 6, 1993) (longshoreman injured outside territorial waters); *Mora v. Tex. Petroleum Inv. Co.*, No. 22-cv-0615, 2024 WL 1903659 (W.D. La. Apr. 30, 2024) (not § 905(b) case as plaintiff was not a longshoreman, 2024 WL 1586283 at *5–*6 (W.D. La. Apr. 11, 2024)); *Mastrodonato v. Sea Mar, Inc.*, No. 99-cv-2547, 2000 WL 739284 (E.D. La. June 6, 2000) (Jones Act seaman); *Walker v. Braus*, 861 F. Supp. 527 (E.D. La. 1994) (decedent neither longshoreman nor seaman).

[71] *Robertson*, 766 F. Supp. at 539 ("the *Miles* court limited the application of the *Gaudet/Alvez* right to recover consortium strictly to longshoremen injured in territorial waters"); *Hollie*, 1993 WL 22191, at *1 ("the Court expressly limited the application of the *Gaudet/Alvez* right to recover consortium strictly to longshoremen injured in territorial waters"); *Walker*, 861 F. Supp. at 533 ("the trend within the Fifth Circuit indicates that loss-of-society damages are recoverable only in cases that fit the pattern of *Gaudet* or *Alvez*, namely, where a longshoreman is killed or injured within state territorial waters").

[72] *Vedros v. Public Grain Elevator of New Orleans, Inc.*, 620 So.2d 1376 (La. App. 4 Cir. 1993).